## GREEN *vs.* THE STATE.

[INDICTMENT FOR PERJURY.]

1. *Predicate for secondary evidence.*—To authorize secondary evidence of the contents of a written contract, which was in the possession of the prosecutor's agent or overseer, the testimony of said agent, to the effect that, "at the close of the year, he assorted his papers, and destroyed such as he regarded of no value; that he had frequently looked over his papers, and had not lately seen this contract; that he had never looked for it, and had no recollection that it was destroyed, though he was satisfied that it was, as he had not seen it for some time in looking over his papers for other objects,"—is not a sufficient predicate.
2. *Charge ignoring proof of venue.*—A charge to the jury in a criminal case, which authorizes them to find the defendant guilty without proof of the venue, is erroneous.
3. *Charge ignoring intent.*—A charge which authorizes the jury, in a prosecution for perjury, to find the defendant guilty without proof that the false oath was taken willfully and corruptly, is erroneous.

FROM the City Court of Montgomery.
Tried before the Hon. THOS. M. ARRINGTON.

THE indictment in this case, which was found at the February term, 1867, charged that, before the finding thereof, "Samuel, alias Samuel Green, on the trial of a certain cause before G. A. Cushing, a justice of the peace in and for the county aforesaid; in which cause the State of Alabama was plaintiff, and George G. Garner was defendant, upon a criminal charge against said defendant of assault; being duly sworn by said G. A. Cushing, who had authority to administer such oath, falsely swore, that a certain contract between him, said Samuel Green, and one Jefferson Falkner, was not read over to him, said Samuel Green, before he signed it, and that he did not know what said contract was at the time he signed it; the matters so sworn to being material, and the oath of said Samuel, alias Samuel Green, in relation to such matters, being willfully and corruptly false; against the peace," &c. The defendant pleaded not guilty, and issue was joined on that plea. On the trial, at the October term, 1867, the following bill of exceptions was reserved by the defendant:

"On the trial of this cause, a witness was examined on behalf of the State, who proved, that the defendant had made a certain contract with Jefferson Falkner, to labor for him from the date of said contract until the end of the year, and that said contract had been destroyed; that he was the agent of said Falkner, and kept his books and papers connected with his plantation and mill interest; that he assorted his papers at the close of the year, and destroyed such as he regarded of no value; that he had frequently looked over his papers, and had not lately seen this contract; that he had never looked for this paper, and had no recollection that it was destroyed, though he was satisfied that it was, as he had not seen it for some time in looking over his papers for other objects. On this testimony, the State proposed to prove the contents of said contract; to which the defendant objected; which objection the court overruled, and admitted proof of the contents of said contract; to which the defendant excepted.

" It was proved on the trial, that this *witness* (?) was examined, on the trial of a suit pending before 'Squire Cushing, to prove that an assault had been committed on him by one George Garner, who was the supervisor of said Falkner's plantation, for refusing to obey the orders of said Garner as supervisor ; that he was asked, on cross examination, if he had not undertaken, by his contract with said Falkner, to obey all the orders made by the supervisor of the work and business of said Falkner ; and that he answered, in reply to this question, that the contract between himself and said Falkner was not read to him before he signed it, and he did not know what it was.   The State then proved, that the agent of said Falkner, for the purpose of entering into a contract to that effect with them, read from without the guard-house, through the windows, to some four or five negroes who were within, embracing the defendant, a contract previously made with other negroes, whose names could not be given ; and that the contract thus read to the negroes in the guard-house was identical with that afterwards signed by the defendant, except that it was a blank printed form with names not inserted ; but it was shown, also, that the paper signed by the defendant was not read to him before he signed it.   The State produced in evidence, also, a written contract between said Jefferson Falkner and other freedmen, which was printed in part, and which contained these words : ' We, Freeman and Lucy Merriwether, colored field-laborers, obligate ourselves to labor faithfully for Jefferson Falkner each day, Sunday excepted, until the first day of January, 1867 ; working according to, and obeying all orders made by the supervisor of the work or business ; and we also obligate ourselves to observe and be governed by the general rules and regulations of the farm or plantation.'   The State proved, also, that the contract signed by the defendant was, in language and effect, the same as that of Freeman and Lucy Merriwether, quoted above, *as* that read to the defendant out of the guard-house.

" This was all the testimony applicable to the questions of law presented for revision.   Thereupon, the defendant asked the court to charge the jury, ' that if they believed,

Green v. The State.

from the evidence, that the contract of another party was read in the hearing of the defendant, and a contract of similar import was subsequently signed by the defendant, before it was read to him; and that the defendant, in a suit pending against one Garner, in favor of the State, swore that he signed his contract before it was read to him, and did not know what its contents were; and should believe that the statement made by the defendant was correct, he could not be found guilty of the charge of perjury, although a similar contract had been read to him before he signed his own contract.' The court refused this charge, as calculated to mislead, and informed the jury, that if they believed, from the evidence, that a contract with another party was read in the hearing of the defendant, and a contract identical in terms was subsequently signed by him before it was read to him; and should also believe that, in a suit by the State against one Garner, the defendant swore that he signed his contract before it was read to him, and did not know what its contents were,—it was their duty to convict him; but, if they should not be satisfied that the contract signed by him was identical with the contract which he had previously heard read, or, if identical, they should not be satisfied that he was so informed before he signed it, then it was their duty to acquit. To the charge given, and also to the refusal of the charge asked, the defendant excepted."

No counsel appeared in this court for the prisoner.
JNO. W. A. SANFORD, Attorney-General, for the State.

JUDGE, J.—No sufficient predicate was laid for the introduction of secondary evidence of the contract between the prisoner and Jefferson Falkner. The witness who testified to his possession of the books and papers of Mr. Falkner, had never looked for the original contract, and had no recollection that it had been destroyed. *Non constat,* but that it was in existence, and among the other papers of Falkner in the possession of the witness at the time of trial.—1 Greenl. Ev. § 568, and authorities cited; 4 Phil. Ev. (Cowen & Hill's Notes,) pp. 404–5; *Tannis v. Doe, d. St.*

*Cyre*, 21 Ala. The city court therefore erred in permitting the secondary evidence to be introduced.

2. The charge of the court authorized the jury to find the prisoner guilty without proof of the venue. This was also erroneous. —Shepherd's Digest, p. 20, § 22.

3. The charge was also erroneous, in authorizing the conviction of the prisoner without proof that the false oath was taken *willfully* and *corruptly*.—1 Bishop's Criminal Law, § 233 ; *Ogletree v. The State*, 28 Ala. 693.

The judgment must be reversed, and the cause remanded. Let the prisoner remain in custody, until he is discharged by due course of law.