# DeSota Coal Min. & Dev. Co. v. Hill, *et al.*

## *Bill to Enjoin Collection of Judgment.*

(Decided June 30, 1915. Rehearing denied November 18, 1915. 69 South. 948.)

1. *Judgment; Relief Against In Equity; Fraud.*—The fraud for which chancery will set aside a judgment at law must be fraud in the very act of obtaining the judgment or in its concoction, and hence, must be extrinsic or collateral to the matter which was tried and determined by the judgment in question.

2. *Same.*—The facts stated and considered, and it is held that assuming that the false answers of a plaintiff to inquiries by a defendant as to the existence of a vital and decisive fact upon which he seeks a recovery, and supported by a false document, all of which is done knowingly and falsely to deceive the defendant and induce him to forego further inquiry, and which actually achieved that result, amounted to such fraud as will justify equitable relief, still the facts alleged do not justify such relief where plaintiff made no effort to investigate the age of the minor at the place of his birth, which could have been successfully done, as it is gross imprudence for a litigant to accept as true information given him by an adversary who owes him no duty arising from a confidential relation.

3. *Same; Bill; Sufficiency.*—Where the bill alleged that the representative of complainant, after diligent search, was unable to ascertain the age of the minor, except as stated by the minor's uncle, and as shown by the Bible entry, although they endeavored so to do, such allegation, when construed most strongly against the pleader, negatived another allegation that complainant was lulled into inactivity, and caused to desist in his further undertaking to find testimony, which could otherwise have been found, and so destroyed the chief equity of the bill.

[DeSota Coal Min. & Dev. Co. v. Hill, et al.]

4. *Same; Preventing Discovery of Offense.*—Misrepresentations by a party to a suit as to the merits of his cause is not that preventive act that is contemplated by the rule that when a party is prevented from discovering the defense by the act of the opposite party, unmixed with fault or negligence on his part, ordinary diligence is excused.

5. *Same; Grounds.*—Equity will not annul a judgment at law because of the use on the trial of forged documents or perjured testimony.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Bill by the De Sota Coal Mining & Development Company against Jim Hill and another, to enjoin the collection of a judgment, and for general relief. Decree for respondents, and complainant appeals. Affirmed.

For former appeal see *De Sota Coal Mining & Development Company v. Hill,* 188 Ala. 669, 65 South. 988, where it was held that the bill was not sufficient against demurrer to invoke the jurisdiction of equity. As amended, the bill now charges that the judgment was obtained "by fraud and upon perjured testimony which orator was unable to rebut on the trial of said cause at law, and without fault or negligence on its part."

Plaintiff was injured while working in defendant's coal mine, and the gravamen of the charges laid in counts 1, 6, 7, and 8 of the complaint on which the judgment was rendered, which is here sought to be enjoined, was that defendant negligently employed plaintiff, then 13 years of age, to work in said mine in violation of the provisions of section 1035, Code 1907. It is alleged that: "Plaintiff's uncle and next friend in the suit had the custody of plaintiff after the death of his parents, and that the representative of complainant in charge of the investigation pending the law suit, and before the case was tried, went to see said Hill, the uncle, for the purpose of ascertaining the age of plain-

tiff; that in response to an inquiry made to him, the said
H. J. Hill then and there stated to said representative
that the boy was under 14 years of age, and produced
and exhibited to him a family Bible, purporting to show
the age of plaintiff to be under 14 years of age.  *  *  *
Complainant's representative, acting upon the general
and common acceptance of the truthfulness of family
Bible entries of births of children in the family, accept-
ed said entries as genuine and truthful, and was there-
by deceived and lulled into the belief that plaintiff was
under 14 years of age at the time of his said injury,
when in fact said plaintiff was over 14 years of age at
that time, and when in fact said Bible entry  *  *  *
was false."

It is further alleged that the said H. J. Hill, knowing
the difficulties in the way of complainant's represen-
tative for finding out the truth, "took advantage of the
situation and exhibited the false Bible entry  *  *  *
which apparently at the time was the best and only
available evidence of the fact, and the said H. J. Hill
made the false statement to complainant's representative
for the purpose of deceiving him, and for the purpose of
inducing him not to make any further effort to ascertain
the date of the birth of plaintiff," and that relying upon
the truth of the entry and statement of said Hill, both be-
ing false, he was lulled into inaction, and was caused to
desist in his further undertaking to find testimony, as
subsequent development showed could have been found,
to disprove the alleged fact that plaintiff was under
14 years of age when injured, upon which the recovery
of the judgment was had. It is further alleged that com-
plainant became suspicious of the genuineness and
truthfulness of the entry when it was placed in evidence
on the trial, it then appearing from inspection that

the entries of the births of the three older children, including plaintiff, were made with the same pen and with the same ink; that it became known on the trial that plaintiff was born in a remote rural district in the state of Arkansas, where said H. J. Hill then resided also; that immediately after plaintiff's judgment was recovered, complainant's agent set on foot investigations in Montgomery county, Ark. (detailing them) which finally resulted, just after complainant's motion for new trial had been overruled, in the discovery of six witnesses who knew the age of plaintiff to have been over 14 at the time of his injury and who would testify to that fact. The affidavits of these alleged witnesses to that effect are made exhibits to the bill. The bill contains these further allegations: "That complainant's representative was unable to ascertain after diligent search the age of plaintiff, except as stated by his said uncle, and as shown by the Bible entry, though he undertook to do so," and, "complainant being unable to ascertain the age of plaintiff, except as averred above went to trial in said cause, believing and relying upon the statements made to its representative by said Hill, and believing and relying upon the truthfulness of the Bible entry."

The demurrers to the bill challenge its equity, and also the sufficiency of its allegation of adversary fraud, and of diligence on the part of complainant in defense of the suit at law. These demurrers were sustained, and complainant, refusing to amend further, appeals.

J. T. STOKELY, and JOHN R. TYSON, for appellant.

JAMES M. HANBY, and ALLEN, FISK & TOWNSEND, for appellee.

SOMERVILLE, J.—In the exercise of its undoubted jurisdiction to set aside judgments at law for fraud, chancery has always deemed it inexpedient, if not impracticable, to circumscribe the area of justiceable fraud with a boundary that is fixed and inflexible. Hence, it is that, though general rules of limitation have been formulated and everywhere sanctioned, yet occasional aberrations from these settled rules are to be met with in the exercise of this power by most of the courts of this country. Mr. Pomeroy justly declares that: "The ground for the exercise of this jurisdiction is that there has been no fair adversary trial at law. Consequently a distinction is made between fraud, accident, mistake, and the like, relating to the subject-matter of the action, and similar elements relating to the conduct of the suit. Fraud relating to the subject-matter is not of itself sufficient ground for relief."—6 Pom. Eq. Jur. § 648.

So it is said by Mr. Freeman, a profound student of this subject, that: "It is only fraud in the management of the action or proceeding, and by which the complainant was prevented from properly presenting and establishing his cause of action or defense, which may be a ground for relief in equity."—Note to *Little Rock, etc., Ry. Co. v. Wells,* 61 Ark. 354, 33 S. W. 208, 30 L. R. A. 560, 54 Am. St. Rep. 218, 232.

(1) The subject has been repeatedly discussed in the decisions of this court, and it is now thoroughly settled that fraud in this connection means fraud in the very act of obtaining the judgment, or in its concoction; and hence it must be extrinsic or collateral to the matter which was tried and determined by the judgment in question.—*Hogan v. Scott,* 186 Ala. 310, 65 South. 209; *Hardeman v. Donaghey,* 170 Ala. 362, 54

South. 172, wherein numerous authorities are cited and discussed. This rule, though of universal recognition, has not always been consistently applied, and there has been some difference of opinion as to when specific frauds are to be regarded as extrinsic and collateral to the subject-matter of the suit, and when they do not affect the trial in such sense as to aid in the procurement or concoction of the judgment. See Mr. Freeman's note to the leading case of *Pico v. Cohn,* 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 13 L. R. A. 336, 25 Am. St. Rep. 165, 167. In the note in 54 Am. St. Rep. 218, 227, this author says: "Here, the distinction between a *new defense* and *new evidence* must be kept in mind, for while isolated cases may be found indicating that the discovery of new evidence merely may be a ground of relief in equity, the general rule is that if the defendant knew of the defense before the entry of judgment against him, it was his duty, not only to interpose it, but to employ all lawful methods, whether legal or equitable, of procuring the evidence necessary to establish it." (Italics supplied.)

In the instant case, the complaint itself warned the defendant (complainant here) that a vital and decisive issue in the case was whether or not the plaintiff was under or over 14 years of age at the time of his injury, and inevitably suggested the defense, viz., a simple negation of the affirmative allegation of the complaint. This was the sole issue upon which the case was tried before the jury on the defendant's general denial, and on this issue the verdict was rendered. The defendant knew that his defense must lie solely in a denial of this allegation, which, if established by the plaintiff, would of necessity result in a judgment in his favor. In such a state of the pleadings, and upon such a trial, it is some-

what difficult to understand how the defendant could have "gone to trial believing and relying upon the statement made to its representative by said H. J. Hill, and believing and relying upon the truthfulness of the Bible entry."

The proposition is manifestly inconsistent with the record.

(2) Conceding, without deciding, that a plaintiff's false answers to inquiries made by the defendant, affirming the existence of a vital and decisive fact upon which he seeks a recovery, and supported by a false document exhibited to the defendant, all of which is done knowingly and falsely to deceive the defendant and induce him to forego further inquiry as to the existence vel non of that fact, and which actually achieves that desired result, is a fraud which is extrinsic and collateral to the cause of action, and cognizable by a court of chancery as a basis for relief against a resulting judgment for the plaintiff, nevertheless, we are clearly of the opinion that such alleged fraud is not available to this complainant under the allegations of its amended bill of complaint.

(3) We note in passing that the bill first alleges that by the false statement and the Bible entry complained of the complainant "was lulled into inaction, and was caused to desist in his further undertaking to find testimony" which could otherwise have been found, and afterwards alleges that its representative "was unable to ascertain, after diligent search, the age of the plaintiff, except as stated by his said uncle and as shown by the Bible entry, *though he endeavored to do so.*" Construing the latter allegation more strongly against the pleader, it amounts to a negation of the former, and destroys the chief equity of the bill." We prefer, how-

ever, to rest our conclusion upon the merits of the case as intended to be made by the bill, and as discussed by counsel in briefs.

The case of *Adler v. Van Kirk, L. & C. Co.,* 114 Ala. 551, 21 South. 490, 62 Am. St. Rep. 133, is, we think, conclusive to the effect that the complainant was guilty of laches in the tardy discovery of the witnesses with whose testimony he would now overthrow the claim of the plaintiff in judgment by proving the falsity of H. J. Hill's testimony, and of the Bible entry, as to the under age of the plaintiff. We quote from the opinion of Chief Justice BRICKELL in that case: "The bill is essentially a bill of review, based upon alleged newly discovered evidence which, it is the theory of the bill, shows that, by false and fraudulent representations made several months prior to the rendition of the consent decree, upon an accounting * * * then had between the parties touching the demands secured by the mortgage, the Land & Construction Company, relying upon such representations and believing them to be true, had been induced to admit and to bind itself to pay an amount largely in excess of what was in fact owing by it upon those demands. * * * It is a clear inference from the averments of the bill that the complainant was as fully possessed of the facilities for prosecuting its inquiries before as it was after the consent decree was entered. * * * The only pretence of an excuse offered in the bill for this remarkable supineness is that the complainant, its officers and agents, relied implicitly on the representations, which are alleged to have been made by a member of the other firm of Worthington, Elliott & De Bardeleben [the plaintiff's assignor], believing them to be true, and not having any reason to suspect that they were untrue. The only re-

lation shown by the bill to have existed between the complainant and Worthington, Elliott & De Bardeleben is that of mortgagor and mortgagee. Such relation is, so far as the question under consideration is concerned, one merely of debtor and creditor. * * * This relation is not one of a confidential character. * * * Whether the relation of trust and confidence, if it had existed betwen the complainant and Worthington, Elliott & De Bardeleben, would have relieved the complainant from its laches is not material here to consider; for no such relation existed between them, and the complainant, in relying with implicit confidence upon the representations made to it, did so at its peril. To admit of such an excuse would be, in effect, to destroy the principles so well established and so essential to the conservatism of the law."

See, also, to the same effect, *McDonald v. Pearson,* 114 Ala. 630, 644, 21 South. 534, and *Otis v. Dargan,* 53 Ala. 178.

It appears in the instant case that the complainant (defendant in judgment) made no effort to investigate the age of the plaintiff at the place of his birth, as confessedly it could have successfully done before the trial; and the fact that he was born in a remote rural community, instead of being an obstacle to success, would undoubtedly give the greater hope of success, since in such communities, as common knowledge informs us, births, deaths, and marriages are noted and remembered by neighbors with amazing accuracy. It may be urged that the complainant did not discover the plaintiff's birthplace until the trial of the case. But it was certain that he had a birthplace somewhere, and strongly probable that his parents had neighbors, or even relations, who might have more or less accurate knowledge

as to the date of his birth. The fact was well within the range of hopeful inquiry, as the sequel clearly shows, and as the bill confesses. The argument of complainant's counsel on this phase of the case is founded in limine upon a legal fallacy, viz., that any party litigant may excuse himself from the duty of preparing the cause for trial when the proof of his cause is not immediately available, merely because his adversary asserts to him the truth of his opposing contention. As human nature is now constituted, no litigant can safely rely upon the interested information given to him by an adversary who does not owe to him the duty that springs from a confidential relation; and to accept it as true with unquestioning credulity must be regarded as the grossest imprudence.

It is impossible, as it seems to us, to make any logical distinction between knowingly false statements, made to a litigant by an adversary party respecting the merits of his case, by parol out of court, and by written pleadings and answers to interrogatories filed in court. If he may trustingly accept the one as true, he may, with equal assurance, accept the other. And since a fraudulent purpose to forestall further inquiry and lull into inaction may as well be imputed to the one as to the other, the result would be the insufferable evil of reviewing in chancery courts almost every judgment that has been rendered in adversary suits, than which it is infinitely better that occasional unjust judgments should stand unrebuked, and their wrongful results go unredressed.

(4) The complainant relies strongly upon the oft-stated and well-recognized principle that ordinary diligence in these matters will be excused when the complainant was prevented from discovering his defense *by the*

*act of the opposite party,* unmixed with fault or negligence on his part. But, as already shown, misrepresentations by an adversary as to the merits of his case is not the kind of preventive act contemplated by this rule.—*Adler v. Van Kirk, etc., Co.,* 114 Ala. 551, 21 South. 490, 62 Am. St. Rep. 133.

We are referred to the case of *Hall v. Pegram,* 85 Ala. 522, 5 South. 209, 6 South. 612, as an authority which justifies the complainant's conduct in the present case. But that case is manifestly not in point, for the trust there reposed was by a foreign domiciliary executor in a resident administrator, both representing the same estate, with relations both *actually and officially confidential;* and the administrator filed a large claim in his own favor against the estate, at the last moment, and procured its allowance on a final settlement at which *the estate was not represented,* and of which the foreign executor had *no personal notice.* So, in the case of *Humphreys v. Burleson,* 72 Ala. 1, cited in appellant's brief, relief against a fraudulent judgment was granted because in the language of the opinion: "The relation existing between these parties, the legal relation—that of trustee and cestui que trust—independent of the natural relation of brother and sister, rendered it the duty of the appellee to communicate to the appellant a fair, full, truthful statement of her interest in the estate he was administering."

Mr. Pomeroy says that: "In order that [fraudulent] concealment shall be ground for any equitable relief, there must be a duty to disclose. Ordinarily when there are two parties on an equal footing before the court, there is no such duty.  *  *  *  That the adversary has not communicated facts which tend to defeat his claim or to impeach his witnesses is not ground for relief." —6 Pom. Eq. Jur. § 654.

Or, as stated by another authority: "No party is bound to furnish weapons to his adversary or plead himself out of court; and the mere fact that he keeps silence and does not communicate to the court or to the adverse party facts which would defeat his recovery is not such fraud as will justify a court of equity in enjoining the resulting judgment."—23 Cyc. 1026, E.

This principle is also clearly stated by Mr. Freeman in his note to *Little Rock, etc., Co., v. Wells,* 54 Am. St. Rep. 218, 233.

The case of *Taylor v. N. & C. R. R. Co.,* 86 Tenn. 228, 6 S. W. 393, is strongly relied upon by appellant. That case is somewhat anomalous, as pointed out by Mr. Freeman in the note above referred to (pages 234, 235). We are not prepared to approve the general principle upon which the court seems to have based its conclusions, but the case is not an authority in point here, for the fraud practiced was of an entirely different character.

In support of the contention that the complainant was entitled to rely upon the genuineness and truthfulness of the Bible entry, we are referred to the case of *Boynton v. Chicago, M. & L. Co.,* 84 Ark. 203, 105, S. W. 77. It appears that the plaintiff's attorney placed in evidence a certified copy of a recorded judgment, to establish a res judicata in the case in suit, which copy, unknown to the defendant and his attorneys, omitted something on the record which would have shown the total invalidity of the judgment. The question presented on a bill filed to set aside the judgment was "whether opposing counsel were negligent in accepting this copy and not examining the court record itself in order to ascertain the truth in regard to this turning point in the titles."

Said the court: "Litigants and counsel have a right to rely upon a certified copy of a record introduced into evidence in court by a practicing lawyer as being the truth; and there is no negligence that can be imputed to either litigant or his counsel in not verifying a *certified copy of a public record.* Records are considered the highest form of evidence, and authenticated copies of them are made by statute as admissible as the records themselves."

Without approving that decision, it is sufficient to say that reliance upon the certificate of a public officer as to the contents of a public record at a distant place is a very different thing from reliance upon a private document, exhibited and vouched for only by a partisan adversary. Hence that case is without value here.

(5) So far as the use on the trial of perjured testimony or forged documents is concerned, it is settled beyond further controversy, on principles of public policy, that equity will not for such causes annul a judgment.—*U. S. v. Throckmorton,* 98 U. S. 61, 25 L. Ed. 93; *Greene v. Greene,* 2 Gray (Mass.) 361, 61 Am. Dec. 454; *Hass v. Billings,* 42 Minn. 67, 43 N. W. 797; *Pico v. Cohn,* 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 13 L. R. A. 336, 24 Am. St. Rep. 159, and note, 165; *Peterson v. Blanton,* 76 Ala. 264; *Governor, etc., v. Barrow,* 13 Ala. 540. There are a few cases to the contrary, which must be distinguished, as, for example, *Marshall v. Holmes,* 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870; *Graver v. Fauret,* 76 Fed. 257, 22 C. C. A. 156; *Adams v. Secor,* 6 Kan. 542; *Burgess v. Lovengood,* 55 N. S. 457; and *Stowell v. Eldred,* 26 Wis. 504.

Most of the departures from the general rules above stated have been in ex parte proceedings (6 Pom. Eq. Jur. § 654), or where the defendant was absent or not

represented when the judgment was obtained (*Keyes v. Brackett,* 187 Mass. 306, 72 N. E. 986, 3 Ann. Cas. 81; 54 Am. St. Rep., note, p. 236; 25 Am. St. Rep. note, p. 167; *Wood v. Wood,* 136 Iowa 128, 113 N. W. 492, 12 L. R. A. (N. S.) 891, 125 Am. St. Rep. 223), or where some document has been discovered after the judgment, which is conclusive of the issue tried, and of the existence of which the party was excusably ignorant (54 Am. St. Rep. note, p. 229; *Cox v. M. & G. R. R. Co.,* 44 Ala. 611; *Caller v. Shields,* 2 Stew. & P. 417, 423; *Shinkle v. Letcher,* 41 Ill. 216).

The case of *Wilson v. Wilson,* 113 Ala. 670, 21 South. 67, as pointed out on the former appeal in this case, is without value as a precedent on this subject, since the sufficiency of the fraud charged and the diligence shown were in no wise questioned, and the ruling was merely that the evidence established the allegations of the bill.

The learned trial judge sustained the demurrer on the ground that the infant plaintiff Hill was not responsible in any way for the fraudulent conduct of his uncle, H. J. Hill, though named as his "next friend" for the prosecution of the suit. We deem it unnecessary to pass upon this question, since we prefer to base our conclusion upon the considerations above stated.

Let the decree of the city court, sustaining the demurrer to the amended bill of complaint, be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.