(110 So. 574)

### BOLDEN et al. v. SLOSS–SHEFFIELD STEEL & IRON CO. (6 Div. 407.)

(Supreme Court of Alabama. June 18, 1925. Rehearing Denied Jan. 28, 1926. Further Rehearing Denied Dec. 9, 1926.)

1. Pleading ⬥214(1)—Averments of bill are taken as true on demurrer.

Averments of bill are taken as true on demurrer.

2. Judgment ⬥444—Perjury or false swearing is not per se a ground of equitable interference with judgments at law.

Perjury or false swearing in a course of litigation is not per se a ground of equitable interference with judgments at law.

3. Judgment ⬥443(1)—Equity will afford relief against judgment, where jurisdiction of court of law is acquired by fraudulent concoction of simulated cause of action.

Where jurisdiction of court of law is acquired by fraudulent concoction of a simulated cause of action and the fraud consummated through instrumentality of a court of justice, equity will afford relief against the judgment.

4. Judgment ⬥460(4)—Bill to enjoin enforcement of judgment for workmen's compensation for one who had falsely represented that she was employee's wife held not demurrable.

Bill to enjoin enforcement of judgment at law for fraud in its procurement, alleging that defendant by falsely representing and testifying that she was wife of a deceased employee obtained an award of compensation under Workmen's Compensation Law (Laws 1919, p. 206), held not demurrable, the very existence of defendant's cause of action having been simulated.

Somerville, Gardner, and Thomas, JJ., dissenting.

Appeal from Circuit Court, Jefferson County; W. M. Walker, Judge.

Bill in equity by the Sloss-Sheffield Steel & Iron Company against Mary Belle Bolden, alias Hughley, and S. R. Hartley. From a judgment overruling a demurrer to the bill, defendants appeal. Affirmed.

S. R. Hartley and E. M. Thomas, both of Birmingham, for appellants.

A court of equity will not set aside a judgment of a court of competent jurisdiction because founded on perjured testimony, or for any matter presented by the issue in the first court. McDonald v. Pearson, 114 Ala. 630, 21 So. 534; Hardeman v. Donaghey, 170 Ala. 362, 54 So. 172; Hogan v. Scott, 186 Ala. 310, 65 So. 209; De Soto, etc., Co. v. Hill, 188 Ala. 667, 65 So. 988; Sloss Co. v. Lang, 213 Ala. 412, 104 So. 770; U. S. v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Greene v. Greene, 2 Gray (Mass.) 361, 61 Am. Dec. 454; U. S. v. Gleeson, 90 F. 778, 62 U. S. App. 311; Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870. A final judgment cannot be annulled merely because it can be shown to have been based upon perjured testimony. Steele v. Culver, 157 Mich. 344, 122 N. W. 95, 23 L. R. A. (N. S.) 564; Gray v. Barton, 62 Mich. 186, 28 N. W. 813; Hanley v. Hanley, 114 Cal. 690, 46 P. 736; Friese v. Hummel, 26 Or. 145, 37 P. 458, 46 Am. St. Rep. 610; Little Rock, etc., Co. v. Wells, 61 Ark. 354, 33 S. W. 208, 30 L. R. A. 560, 54 Am. St. Rep. 216; Camp v. Ward, 69 Vt. 286, 37 A. 747, 60 Am. St. Rep. 929; Hilton v. Guyot, 159 U. S. 113, 16 S. Ct. 139, 40 L. Ed. 95.

Bradley, Baldwin, All & White, William M. Rogers, A. Key Foster, and W. W. Kennedy, all of Birmingham, for appellee.

False swearing or perjury, accompanied by extrinsic or collateral fraud, is sufficient ground in equity for vacating a judgment at law. The averments of the bill in this case are sufficient to show collateral or extrinsic fraud. Marine Ins. Co. v. Hodgson, 11 U. S. (7 Cranch) 332, 3 L. Ed. 362; Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Laun v. Kipp, 155 Wis. 347, 145 N. W. 183, 5 A. L. R. 669; Edmondson v. Jones, 204 Ala. 134, 85 So. 799; Hardeman v. Donaghey, 170 Ala. 362, 54 So. 172; Weyant v. Utah S. & T. Co., 54 Utah, 181, 182 P. 189, 9 A. L. R. 1119; C., R. I. & P. v. Callicotte (C. C. A.) 267 F. 799, 16 A. L. R. 386; El Reno Mutual Co. v. Sutton, 41 Okl. 297, 137 P. 700, 50 L. R. A. (N. S.) 1064. An award procured upon a false petition, invoking the power or jurisdiction of the court, may be set aside in equity. Keenum v. Dodson, 212 Ala. 146, 102 So. 230.

BOULDIN, J. The bill is to enjoin a judgment at law for fraud in its procurement. The appeal is from a decree overruling demurrers to the bill.

The case made by the bill and exhibits is in substance this:

John Hughley, an employee of complainant, was killed by accident under conditions entitling a lawful wife, as a legal dependent, to compensation under the Workmen's Compensation Law (Laws 1919, p. 206). Thereafter the respondent "Mary Belle Bolden, alias Mary Belle Hughley," filed her petition in the circuit court claiming compensation as the dependent wife of the deceased employee.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On the hearing the petitioner and a witness for her testified in open court that she was lawfully married to the deceased about six years prior to his death and was living with him as his wife at the time of his death. Thereupon a judgment was rendered against complainant awarding compensation. About six months after this judgment was rendered complainant discovered it had been procured by fraud and misrepresentation in that petitioner was never married to the deceased and was not living with him at the time of his death, and the testimony to these facts was false and fraudulent. It is averred the testimony was not known to complainant to be false at the time of the trial, and that due diligence was used to ascertain all the facts pertaining thereto. The exhibit shows the proceeding for compensation was in the name of "Mary Belle Hughley."

The equity of the bill is challenged by general demurrer, and by special grounds setting up that the fraud alleged is perjury or false swearing; that it is not fraud in the act of obtaining the judgment, or in its concoction; that it is not extrinsic or collateral to the matter which was tried and determined by the judgment in question.

[1] Under the averments of the bill, taken as true on demurrer, the very existence of the cause of action was simulated, a mere concoction, conceived with malus animus, and supported by perjury. Money so obtained, without the aid of a court, as the unwitting instrument of fraud, would be money obtained under false pretenses, denounced as a felony in Alabama. In moral obliquity it is analogous to obtaining money by falsely personating another with intent to defraud, made a felony by section 4136, Code of 1923. Again it is analogous in principle to falsely personate another in judicial proceedings whereby the person so personated may become liable for a sum of money. Code 1923, § 4154. In the one case the person so personated is defrauded by the imposition of a burden, maybe in the interest of a third person; while in the other the fruits of the fraud inure to him who is guilty thereof. The fraud here set up was "in the procurement of the judgment itself"; fraud "practiced in the act of obtaining judgment." It was fraud in simulating and setting up in the suit a relationship to deceased going to the jurisdiction of the court. The court's jurisdiction was invoked by fraud. In such case there is a fraud on the court as well as the opposing party. The case is different from one of antecedent fraud entering into the transaction giving rise to the suit. In the latter case the question of fraud vel non is an issue between the parties—is "intrinsic," as that term is used in the authorities.

[2] Perjury or false swearing in the course of litigation is not per se a ground of equitable interference with judgments at law. One reason of the rule is that ordinarily the opposing party has knowledge of the falsity of the testimony, or has reason to expect any testimony which will prove the case of his adversary. The truth of the case is the very issue to be determined in the trial at law. The more insistent reason is that it would tend to throw into the court of equity all cases where an issue of veracity has arisen in the trial at law; burden the equity court with the retrial of issues which were or should have been settled at law, and impair the dignity and binding force of judgments of courts of co-ordinate jurisdiction. It is well said that injustice is better tolerated in an occasional case than the general injustice, uncertainty, delay, and expense which would otherwise result.

[3] But where the jurisdiction of the court of law is acquired by the fraudulent concoction of a simulated cause of action, the fraud itself to be consummated through the instrumentality of a court of justice, the protection of the court demands that there should be a remedy. We can conceive of no worse reflection upon a judicial system, no lowering of its dignity and of the respect due to its findings more regrettable than that the tribunal of justice may become an impotent agency of fraud against those who look to it for protection and who are free from fault or neglect in the premises. A court of equity becomes the friend of the court of law in relieving against such results. That the fraudulent scheme contemplated perjury and was consummated thereby does not lessen the call to the jurisdiction of a court of equity.

[4] Such, we think, is the case alleged in the present bill, and that it is not subject to the grounds of demurrer assigned thereto. In our view, this is the effect of our decisions wherein this court has frequently defined the equity jurisdiction, with full review of authorities. We here cite these cases without again reviewing and restating their holdings: Keenum v. Dodson, 212 Ala. 146, 102 So. 230; Hardeman v. Donaghey, 170 Ala. 362, 367, 369, 54 So. 172; Noble v. Moses, 74 Ala. 616; Cromelin v. McCauley, 67 Ala. 542; Edmondson v. Jones, 204 Ala. 134, 85 So. 799; Sims v. Riggins, 201 Ala. 99, 105, 106, 77 So. 393; De Sota Coal Min. & Dev. Co. v. Hill, 194 Ala. 537, 69 So. 948; Id., 188 Ala. 667, 65 So. 988; Danne v. Stroecker, 210 Ala. 483, 98 So. 479; Harris v. Harris, 208 Ala. 20, 93 So. 841; Evans v. Wilhite, 167 Ala. 587, 52 So. 845; Nixon v. Clear Creek Co., 150 Ala. 604, 43 So. 805, 9 L. R. A. (N. S.) 1255; McDonald v. Pearson, 114 Ala. 630, 21 So. 534; Watts v. Frazer, 80 Ala. 186; Hall v. Pegram, 85 Ala. 522, 5 So. 209, 6 So. 612; Humphries v. Burleson, 72 Ala. 1; Alder v. Van Kirk L. & C. Co., 114 Ala. 551, 21 So. 490, 62 Am. St. Rep. 133; United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; United States v. Beebe, 180 U. S. 343, 21 S. Ct. 371, 45 L. Ed. 563; Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Marine Ins. Co. v.

Hodgson, 7 Cranch (11 U. S.) 332, 3 L. Ed. 362; Greenleaf v. Maher, Fed. Cas. No. 5,780, 2 Wash. C. C. (Pa.) 393; 6 Pom. Eq. Jur. p. 1092; 2 Story Eq. Jur. § 1575; Freeman on Judgments, § 489; 34 C. J. p. 473, note 80; 1 Black on Judgments, §§ 369, 370; note 54 Am. St. Rep. 227.

Affirmed.

ANDERSON, C. J., and SAYRE, THOMAS, and MILLER, JJ., concur.

SOMERVILLE, J. (dissenting). The bill of complaint in this case shows that the respondent, Mary Belle Bolden, alias Hughley, "filed a petition against your complainant in the circuit court of Jefferson county, Ala., claiming compensation as a dependent wife of the said John Hughley, deceased," and that the trial court found that she was his wife and awarded compensation accordingly.

The fraud upon which complainant relies in invoking the jurisdiction of equity for the impeachment and cancellation of the judgment at law, is thus stated in the bill:

"(6) That shortly prior to the filing of this bill and more than six months after the entry of the aforesaid order or decree, your complainant discovered that the aforesaid order or decree had been procured by fraud and misrepresentation on the part of said Mary Belle Bolden, alias, * * * which said fraud or misrepresentation consisted in this: That the said Mary Belle Bolden, alias, * * * and a witness, Elizabeth Caster, who testified in said cause on behalf of the plaintiff, testified in open court on the trial of the aforesaid cause that the said Mary Belle Bolden, alias, * * * was legally married to the said John Hughley, deceased, about six years prior to his death, and that at the time of the death of the said John Hughley, deceased, the said Mary Belle Bolden, alias, * * * was living with him as his wife. And your complainant further avers that the said testimony of Mary Belle Bolden, alias, * * * and the said Elizabeth Caster, was false, and that the said Mary Belle Bolden, alias, * * * was never married to the said John Hughley, deceased, and was not living with him as his wife at the time of his death."

No other fraud is charged or suggested.

Though not material to the conclusions to be hereafter stated, I call attention, in passing, to the fact that the bill does not charge that the testimony complained of was perjured testimony—that is, that it was knowingly and corruptly false. Green v. State, 41 Ala. 419; State v. Lea, 3 Ala. 602.

The majority opinion concedes that the fraud expressly charged in the bill, the use of false, or even of perjured, testimony, is not a ground for equitable relief against the judgment—a principle of practically universal recognition. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; De Sota, etc., Co. v. Hill, 194 Ala. 537, 69 So. 948.

But, disregarding the actual (and concededly insufficient) charge of fraud as made by the bill, the majority opinion assumes that the petition or complaint in the law case was both false and fraudulent; and concludes that, in thus invoking the jurisdiction of the law court by claiming the right to recover as the wife of the decedent, she was guilty of a fraud upon the defendant, which was extrinsic and collateral to the judgment—fraud, in fact, in its very procurement or concoction. This, it seems clear to me, is a complete renunciation of the long-established and well-understood meaning of those terms, and a total departure from the settled doctrine which has heretofore governed courts of equity in reviewing judgments at law on the ground of fraud.

Fraud which is extrinsic and collateral to the judgment means, and can only mean, fraud which is not involved in the truth or falsity of the claim presented for adjudication. In Norwood v. L. & N. R. R. Co., 149 Ala. 151, 161, 42 So. 683, this court quoted with approval the language of Judge Freeman:

"It is a general rule of equity jurisprudence that a court of equity will not undertake to try and determine the precise question which has been determined at law; * * * that, even in a case of alleged fraud, equity cannot assume jurisdiction where the fraud is not extrinsic and *can only be ascertained by a retrial of the issue which has already been tried and determined.*" (Italics supplied.)

The italicized clause is a perfect epitome of the doctrine.

In De Sota, etc., Co. v. Hill, 194 Ala. 537, 546, 69 So. 948, 950, the availability of fraud by false pleading was directly before the court, and we said:

"It is impossible, as it seems to us, to make any logical distinction between knowingly false statements, made to a litigant by an adversary party respecting the merits of his case, by parol out of court, and by written pleadings and answers to interrogatories filed in court. If he may trustingly accept the one as true, he may, with equal assurance, accept the other. And since a fraudulent purpose to forestall further inquiry and lull into inaction may as well be imputed to the one as to the other, the result would be the insufferable evil of reviewing in chancery courts almost every judgment that has been rendered in adversary suits, than which it is infinitely better that occasional unjust judgments should stand unrebuked, and their wrongful results go unredressed."

That case is direct authority for the proposition that the mere making of false allegations in a complaint, though they are vital to the case and constitute the very cause of action, is not a fraud extrinsic to the judgment; for there the plaintiff alleged that he was only 13 years of age, and his cause of action was based solely upon the defendant's unlawful employment of him—a minor under fourteen—in its mines. Relief against such fraud (so-called) was denied in that case.

In Fulton v. Eggler, 200 Ala. 269, 6 So. 35, the bill was filed by a distributee against

the administrator of the estate and a creditor who had recovered a judgment against the administrator, on a promissory note given by the decedent, for relief against the judgment on the ground of fraud. The bill averred:

"That the aforesaid note was in fact a forgery, and was without consideration, as L. A. Fulton, the plaintiff, well knew at the time she reduced the same to judgment."

The court said, per McClellan, J.:

"It is manifest, too plain to even admit of question, that the bill's allegations do not disclose any character or quality of fraud that measures up to the standard established in this jurisdiction, and defined in the following, among others, of our decisions: De Sota, etc., Co. v. Hill, 194 Ala. 537, 69 So. 948; Hogan v. Scott, 186 Ala. 310, 65 So. 209; Hardeman v. Donaghey, 170 Ala. 362, 54 So. 172."

Anderson, C. J., and Sayre and Gardner, JJ., concurred. In that case, the plaintiff in the law case (as shown by the bill) declared upon a forged and fraudulent instrument. He invoked the jurisdiction of the court upon a simulated and utterly nonexistent cause of action, and induced the court to render the judgment in his favor by exhibiting in evidence the forged note. The bill showed an outrageous fraud, both as to pleading and as to proof, but this court said it was "too plain to admit of question" that the fraud was intrinsic and not available for impeachment of the judgment.

In the very recent case of Sloss-Sheffield, etc., Co. v. Lang, 213 Ala. 412, 104 So. 770, the bill of complaint showed that the respondent had recovered a judgment at law against the complainant, under the Workmen's Compensation Act; that he had filed a petition claiming an allowance for an injury to his eye, arising out of and in the course of his employment; that the claim was false and simulated; and that the judgment was obtained by false testimony that the eye had been injured as alleged, when in fact the injured or defective eye had no relation whatever to his employment.

It is interesting to note the allegations of fraud in the amended bill—these among others:

"The said fraud and misrepresentation of said respondent was in substance that said respondent being blind in one eye, and *knowing this* and also knowing that complainant's agents, servants and employés *were unaware* of this fact, *conceived a scheme* to fraudulently procure money from said company. In and as a part of said fraudulent scheme, he claimed to have received his said injury under such circumstances that your petitioner would be unable to secure any witnesses either to affirm or deny the statements made by respondents, and consequently the complainant, having no knowledge of the facts, would be unable to offer any evidence to contradict or deny respondent's claim. * * * The respondent fraudulently represented, both *in making claim* against the company and at the trial, that he was working

215 ALA.—22

in a heading in the said mine breaking rock with a hammer, when a small piece of rock flew off and struck him in the eye, causing the injury which later resulted in the loss of the sight thereof. *In the prosecution* of his alleged claim and at the trial, he fraudulently led the Sloss-Sheffield Steel & Iron Company, his attorneys, and this *court* to believe that the injury was received (as recited). The said fraud and misrepresentation of the respondent herein consisted not only in his false swearing as a witness in his own behalf at the said trial, but also, and more particularly, *in the conception, instigation, and prosecution* of this said action, which * * * amounts to a *scheme to defraud*, in that the facts which have since been ascertained show that the sight in the said eye was lost as a result of a blow received by said respondent while he was engaged in a fight before * * * he began work for your petitioner." (Italics supplied.)

Those are the facts shown by the record on file, though they do not appear from the printed report. In that case this court said, per Anderson, C. J.:

"The bill * * * when boiled down to a final analysis, is based upon the sole fact that respondent testified falsely upon the trial as to the cause and extent of his injury, and that complainant has since discovered new evidence contradictory of the respondent's evidence as to this fact; in other words, that the judgment was procured on false or perjured testimony. Whatever the rule may be in other jurisdictions, this court has firmly adhered to the one that a bill in equity will not lie to cancel a judgment procured on false testimony, unmixed with accident or fraud on the part of the successful party against the other which prevented him from making his defense. De Sota Co. v. Hill, 188 Ala. 667, 65 So. 988; Hardeman v. Donaghey, 170 Ala. 362, 54 So. 172, and cases there cited."

The concurring justices were Thomas, Bouldin, and the present writer.

Mutatis mutandis, every word of the foregoing quotation is applicable to the instant case. It must be readily apparent to the impartial inquirer, that in each of the three cases above reviewed, exactly as asserted in the instant case, there was an invocation of the jurisdiction of the trial court by the filing of a petition or complaint presenting a falsely simulated and spurious claim, in which the falsehood asserted went to the very cause of action, rendering it in fact nonexistent. It is true, of course, that these several causes of action differ from the cause of action in the instant case, as they do each from the other, but the difference is a superficial difference of fact, merely. I do not see how they can be distinguished in principle, and my brethren of the majority have made no attempt to do so.

The leading, and certainly the most authoritative case, on this subject is United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, often cited in the opinions of this court. In that case a bill was filed to cancel an order

of a board of commissioners of private land claims confirming a title in the respondent's grantor, and also a decree of the district court affirming that decree. The court said (per Miller, J ).

"The specific act of fraud which is mainly relied on to support the bill is, that after Richardson had filed his petition before the board of commissioners, with a statement of his claim and the documentary evidence of its validity, March 16, 1852, he became satisfied that he had no sufficient evidence of an actual grant or concession to sustain his claim, and with a view to supply this defect, he made a visit to Mexico, and obtained from Micheltorena, former political chief of California, his signature, * * * to a grant which was falsely and fraudulently antedated, so as to impose on the court the belief that it was made at a time when Micheltorena had power to make such grants in California; and it is alleged that in support of this simulated and false document he also procured and filed therewith the depositions of perjured witnesses. (After stating the general rule and reviewing authorities.) * * * In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court. On the other hand, the doctrine is equally well settled that a court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or *for any matter which was actually presented and considered* in the judgment assailed. * * * We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, *extrinsic or collateral,* to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." (Italics supplied.)

As to what frauds are extrinsic to the matter tried and adjudicated, so as to fall within the rule of review, we are not without clear and precise definition at the hands of this court, oftentimes repeated. The fraud "must be fraud in the rendition or procurement of the judgment itself." Noble v. Moses, 74 Ala. 616, approving Story's definition that "it must have been practiced in the very act of obtaining the judgment * * * fraud in its concoction"; and Freeman's, that fraud "not connected with the proceedings by which it was obtained, is deemed insufficient." In Watts v. Frazer, 80 Ala. 186, 188, these definitions were again approved.

In Rittenberry v. Wharton, 176 Ala. 390, 401, 58 So. 293, 297, it was said, per Dowdell, C. J.:

"If a cause of action is vitiated by fraud, this is a defense which ought to be interposed to the granting of the judgment or decree, and, unless the interposition of this defense is prevented by fraud, it cannot be asserted against the judgment; for judgments are impeachable for those frauds only which are *extrinsic to the merits of the case,* and by which the court has been imposed upon, or misled into a false judgment. The fraud must be practiced in the *rendition or procurement* of the * * * decree." (Italics supplied.)

In Hardeman v. Donaghey, 170 Ala. 362, 368, 369, 54 So. 172, 174, many of our previous decisions were carefully reviewed, and the following definition—too clear to be misunderstood—was elaborated by Chief Justice Anderson:

"There seems to be a well-defined distinction between fraud practiced in the rendition and procurement of a judgment, 'in the very act of obtaining the judgment or in its concoction,' and in fraud antecedent to the judgment, such as would have constituted a good defense to the rendition of the judgment, but not connected with the proceedings by which it was obtained. In other words, to come within the former rule (of extrinsic fraud) the fraud must relate to *the proceedings,* such as falsifying the entries, improperly influencing court, jury, witnesses, etc., such misconduct as has some direct bearing on the rendition of the judgment and *not triable* or *subject of controversy* under the issues involved upon the trial and the *truth or falsity of which was not in issue.*"

In Sims v. Riggins, 201 Ala. 99, 105, 77 So. 393, 399, the De Sota Case (194 Ala. 537, 69 So. 948, Id., 188 Ala. 667, 65 So. 988), was reviewed in an opinion by Thomas, J., and the rule was approved that fraud, to be vitiating, "must be in the very act of obtaining the judgment, or in its concoction, and hence must be extrinsic or collateral to the matter which was tried and determined by the judgment in question."

The De Sota Case was again reviewed in Hooper v. Peters Land Co., 210 Ala. 346, 348, 98 So. 6, 8, in an opinion by Sayre, J., wherein its principles were restated and approved, among others, that:

"It is only fraud in the *management of the action or proceeding,* and by which the complainant was prevented from properly presenting 'and establishing his cause of action or defense, which may be a ground for relief in equity." (Italics supplied.)

It was again cited as authority by the same learned justice in Danne v. Stroecker, 210 Ala. 483, 485, 98 So. 479, and the rule recognized that the fraud must be "in the management of the proceeding in the probate court—to employ the language of the decisions—in the concoction of the decree of sale."

In the Throckmorton Case, supra, Mr. Justice Miller made clear the meaning of extrinsic fraud, and enumerated the cases within its scope as follows:

"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false

promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these, and *similar cases* which show that there has never been a real contest in the trial or hearing of the case." (Italics supplied.)

In view of these clear, consistent, and authoritative definitions of extrinsic fraud, I do not see how the majority of the court can now hold, as they expressly do, that the mere filing of a complaint, declaring upon a false cause of action is a fraud extrinsic to the judgment—a fraud in the very act of obtaining the judgment, or of its concoction. "Concocting" a cause of action, that is conceiving it, and planning to establish it in court, is a very different thing from concocting a judgment, and herein lies the fallacy of this decision. It must be perfectly obvious that, if merely presenting a false cause of action to the law court by filing a complaint is to be regarded as an extrinsic fraud not involved in the issue to be tried, the whole doctrine of United States v. Throckmorton, and of our own cases which have followed it, is swept away; for how can any false cause of action ever reach the trial stage on false testimony unless it has first been presented to the court by a complaint invoking its jurisdiction?

Certainly this is a new theory of extrinsic fraud, which removes all restrictions from the revisory power of equity courts, and is in the very teeth of our decisions, De Sota, etc., Co., v. Hill, supra, Fulton v. Eggler, supra, and Sloss-Sheffield, etc., Co. v. Lang, supra, all of which I have fully reviewed above, showing in each case an invocation of jurisdiction by a false complaint to establish a fraudulent cause of action.

Fifty years ago, Chief Justice Brickell, speaking for this court on this identical subject, said:

"The numerous adjudications on this point are marked by a harmony of opinion not always found on legal questions; and the result is thus stated by a writer of learning and discrimination: 'The actual adjudication of any question is in fact final, under all circumstances unless corrected by some appellate tribunal and is never subject to re-examination in any other than an appellate court, upon an issue of law or fact; nor upon the sole ground, that the former decision is contrary to equity or good conscience. It is always a condition precedent to the proper action of a court of equity, in interfering with a judgment or decree not before it upon appeal, that facts be disclosed, establishing that the matter now in the form of an adjudication is in truth, without any fault of the party seeking to avoid its effect, a determination in which he could not present his cause of action, or his ground of defense, as the case may be, to the consideration of the court.'

Freeman on Judgments, § 485. To this rule, this court has strictly, inflexibly, and uniformly adhered." Waring v. Lewis, 53 Ala. 616, 624.

In Pico v. Cohn, 91 Cal. 129, 134, 25 P. 970, 971, 13 L R. A. 336, 25 Am. St. Rep. 159, 163, the court explains the meaning of "extrinsic or collateral fraud," viz., that it is in those cases where—

"the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial; but when he has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence, and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy."

Further elucidation seems unnecessary, but I shall nevertheless add Mr. Pomeroy's contribution because of the great value and authority of his conclusions. He says:

"We have seen that the fraud which warrants equity in interfering with such a solemn thing as a judgment must be fraud in obtaining the judgment and *must be such as prevents the losing party from having an adversary trial of the issue.* Perjury is a fraud in obtaining the judgment, but it *does not prevent an adversary trial.* The losing party is before the court and is well able to make his defense. His opponent does nothing to prevent it." 5 Pom. Eq. Jur. 4685, § 2077 (section 656).

And he says, generally:

"The ground for the equitable jurisdiction to interfere is, therefore, something dehors the issues, something arising out of or connected with the trial itself of the legal action in the court of law." (Italics supplied.) Id., 4671, § 2068 (section 647).

As to what is an "adversary trial," I do not see how there can be any difference of opinion. Certainly it is nothing more nor less than a trial in which there are adversary parties before the court, who have had full opportunity to present and establish their opposing contentions, if any they have. Greene v. Greene, 2 Gray (Mass.) 361, 61 Am. Dec. 454; Price v. Cohn, supra; Emerson v. Udall, 13 Vt. 477, 483, 37 Am. Dec. 604.

In Greene v. Greene, supra, the court, holding that fraud is sometimes admissible for the impeachment of judgments, said, per Shaw, C. J.:

"But where the same matter has been actually tried, or *so in issue* that it *might have been tried,* it is not again admissible." (Italics supplied.)

In such a case, it is wholly immaterial whether a party has relied upon the weak-

ness of his adversary's evidence or has offered contradictory evidence of his own; it is an adversary trial none the less.

The reasons for this restriction upon the revisory power of courts of equity have often been forcibly stated.

In a note to Pico v. Cohn, 25 Am. St. Rep. 159, 168, Judge Freeman says:

"If a controversy may be reopened by tendering an issue as to such perjury or subornation of perjury, it would be continued indefinitely, or until one or both of the parties had exhausted their means of continuing it; and should the original judgment be reopened on the ground of alleged perjury, the decree reopening it ought in turn, upon the same principle, be subject to attack upon the same ground."

In United States v. Throckmorton, supra, it was observed that:

"The mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

In Pico v. Cohn, supra, Chief Justice Beatty said:

"Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is, that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again ad infinitum."

As weighty and sufficient as these reasons are, I think there is another, weightier still, viz., that this arrogation of revisory power over determinations of fact, as expressed in judgments at law, is in effect, a denial of the right to trial by jury, and a confusion of the equity and common-law jurisdictions. This court has given a mandate to the equity court below to exercise its jurisdiction by investigating the very issue presented to and determined by the law court. It will hear the witnesses, consider their credibility, and readjudge a legal issue of fact wholly outside of its own jurisdiction.

It is hardly necessary to observe that our recent case of Keenum v. Dodson, 212 Ala. 146, 102 So. 230, involving as it did an ex parte petition for allotment of homestead, and a decree thereon without adversary parties or trial, is not in conflict with any of the principles and authorities stated and cited above. On the contrary, it is in perfect harmony with the basic principle which I have elaborated so fully.

The necessary effect of the majority opinion and decision is to strike down the whole doctrine restricting equity jurisdiction in these cases, and to overrule, by necessary implication, the cases of De Sota, etc., Co. v. Hill, Fulton v. Eggler, and Sloss-Sheffield Co. v. Lang, supra, to say nothing of the numerous cases in which the principle of those cases has been carefully stated by this court.

The doctrine of stare decisis, though not without its limitations, is the only thing that gives form, and consistency, and stability to the body of the law. Its structural foundations, at least, ought not to be changed except for the weightiest reasons. The reasons underlying the rule restricting the revisory power of equity courts over judgments at law are as potent to-day as when the rule was first announced. I am convinced that both the legal profession and the general public would prefer to have certainty and stability in the law rather than to have a succession of changes, dependent upon the shifting views of the judges who follow each other on our courts.

I feel that, in the effort to remedy an alleged wrong in this particular case, my brethren of the majority have abandoned a principle, long and wisely established, and have forgotten the rule of stare decisis in its most wholesome and useful sphere of action.

For the reasons stated, I must respectfully dissent from the opinion and decision of the majority.

GARDNER and THOMAS, JJ., concur in the dissenting opinion above.

### On Motion for Rehearing.

PER CURIAM. Motion for rehearing denied.

THOMAS, J. A careful consideration of our later cases convinces me that a rehearing should be granted. Sloss-Sheffield S. & I. Co. v. Lang, 213 Ala. 412, 104 So. 770; De Sota Coal Min. Dev. Co. v. Hill, 188 Ala. 667, 65 So. 988; Id., 194 Ala. 537, 69 So. 948; Sims v. Riggins, 201 Ala. 99, 105, 106, 77 So. 393. I find it difficult to distinguish the instant facts from those shown by the record in the Lang and Hill Cases, supra.

I therefore now concur in the foregoing dissenting opinion by SOMERVILLE, J.

### On Further Rehearing.

BOULDIN, J. Upon reading the full and carefully prepared dissenting opinion by Mr. Justice SOMERVILLE, and in order that the case be further considered in the light of that opinion and in view of the importance of the principles involved, the case was restored to the rehearing docket ex mero motu. A careful study impresses us the opinion fails adequately to note the difference between the judgment here involved and one involving alleged transactions inter partes. When a stipulated or concocted claim is pre-

sented in court involving alleged transactions between the parties, the defendant is at once put on notice of the fraud.

The case here is a law-made demand founded upon a humane policy—a demand in favor of a third person having no relation to the accident, but to the employee. Taking advantage of the law by simulating a relation peculiarly within the knowledge of the claimant with the purpose to cover up the facts and to establish the claim by perjury, despite due diligence of the other party to ascertain the facts, is the case before us. It is a concocted suit, a concocted judgment, a fraud upon the law itself. Equity is not more tolerant of one form of fraud than another, but for sound reasons takes no jurisdiction to vacate judgments at law except for fraud in procurement.

Such relief should not be limited in cases of this character to trickery after suit is brought, but should cover the whole matter of fraud in using the law, not procedure merely, but the law creating demands without regard to wrong on the part of the employer or employee, as an instrument of fraud. We repeat it is a fraud on the law itself, which should not be tolerated, if it is averred and proven the other party exercised due diligence to prevent such imposition. The entire history of equity jurisprudence is one of growth to meet conditions, as they arise, for the application of its principles of justice and equity.

SOMERVILLE, J. (dissenting). In my original dissenting opinion I called special attention to the nature of the fraud charged in the bill of complaint. I wish now to present in parallel columns the case made by the bill, and the case which has been decided by this court:

| The Bill. | The Opinion. |
|---|---|
| "The said Mary Belle Bolden, and a witness, Elizabeth Caster, who testified in said cause on behalf of the plaintiff, testified in open court on the trial of the aforesaid cause that the said Mary Belle Bolden was legally married to the said John Hughley, deceased, about six years prior to his death, and that at the time of the death of the said John Hughley, deceased, the said Mary Belle Bolden was living with him as his wife. And your complainant further avers that the said testimony * * * was false, and that the said Mary Belle Bolden was never married to the said John Hughley, deceased, and was not living with him as his wife at the time of his death." | "Under the averments of the bill, taken as true on demurrer, the very existence of the cause of action was simulated, a mere concoction, conceived with malus animus, and supported by perjury. "Taking advantage of the law by simulating a relation peculiarly within the knowledge of the claimant with the purpose to cover up the facts and to establish the claim by perjury, despite due diligence of the other party to ascertain the facts, is the case before us." |

Just what conduct and facts amount in law to a marriage, or to a living together as husband and wife, is a mixed question of law and fact, as to which the best judicial minds have often differed, and as to which laymen may easily and honestly differ. See Prince v. Edwards, 175 Ala. 532, 57 So. 714. Testimony affirming the ultimate conclusion necessarily involves a judgment of facts. The falsity of the conclusion is perfectly consistent with the honesty and good faith of the witness. So here, notwithstanding the alleged falsity of her conclusions that she was legally married to the deceased workman, and was living with him as his wife at the time of his death, this claimant may have honestly considered that she was his wife, and that she was living with him as his wife.

The bill of complaint carefully refrains from charging that the alleged false testimony was knowingly false, or that the claimant concocted the testimony for the purpose of obtaining a fraudulent judgment, or that she had any fraudulent purpose whatever. Instead, it relies alone upon the bald proposition that the testimony establishing the claimant's relationship to the deceased was untrue. Yet my brothers of the majority, contrary to that fundamental rule of pleading that on demurrer ambiguous or doubtful allegations must be construed against the pleader, have supplied the essentials omitted from the bill, and have gratuitously injected into it, as conclusions necessarily following as matter of law from the mere charge that the testimony was false, the features of a fraudulent concoction of the cause of action, a malus animus, and a false simulation of relationship with a purpose to cover up the facts, and to establish the claim by perjury. Such an expansion of the allegations of the bill—such an adoption of positive conclusions of fact not even hinted at in the bill—is, I think, without precedent, and utterly unwarranted in law or reason.

Without any "boiling down," as was done in Sloss-Sheffield, etc., Co. v. Lang, 213 Ala. 412, 104 So. 770, this bill charges no more than that the judgment was based on testimony that was false. The majority opinion deals with a very different case. Upon this consideration alone I would be unable to concur. But, as pointed out in my original dissenting opinion, regardless of that discrepancy, the complainant is not entitled to relief under the repeated decisions of this court.

A departure from the principle of those decisions is now sought to be justified on the ground that a claim under the Workmen's Compensation Act is different from other claims, in that it is created and given by law, and hence that the simulation of such a claim is a fraud and outrage upon the law as well as upon the employer, which justifies and requires a more liberal rule for impeachment of the judgment obtained thereon. I am un-

able to perceive the merit of such a distinction. The claim of a workman's widow for compensation under the act is not a gift. It grows out of the contract of employment. The dependent's right to collect, and the employer's duty to pay, the limited compensation fixed by the act, is grafted upon the contract and service of the workman by the law, but it is a substitute for the common law or statutory action previously existing in cases of injury due to the employer's negligence. The workman renounces the right to recover actual and punitive damages for negligent injury, and the employer renounces the right to plead the contributory negligence of the workman. The act is based upon the principle of give and take, and is mutually advantageous. It covers cases of negligent injury as well as nonnegligent injury.

There is in truth no difference, so far as the impeachment of judgments is concerned, between a judgment on a claim under the Compensation Act and on any other claim founded on contract or on tort, or on general property rights.

The question of the plaintiff's relationship to another person, as the essential basis of his right to maintain the suit and recover judgment, may and does arise in every sort of action. It is not peculiar to actions under this act. Why, then, should a special rule be devised for the review and retrial of simulated relationships in this one class of actions, while denying its application to all others? What would be the legal or moral difference in the plaintiff's simulation of a mother's relationship in an action under Code, § 5695, for injuries to a minor child, or of a wife's relationship in a suit for dower or a distributive share in her alleged husband's estate? Why is not the concoction of a forged note, and the procurement of a fraudulent judgment thereon against a dead man's estate (as in Fulton v. Eggler, 200 Ala. 269, 76 So. 36), as much of an outrage on the law and on the court rendering the judgment as the simulation of relationship to a deceased workman? How can it be said that the fraudulent looting of a dead man's estate by the crime of forgery is less reprehensible, and less entitled to redress, than the imposition of a false dependent's claim upon a living employer? But this attempted distinction has already been refuted by the decision of this court in Sloss-Sheffield, etc., Co. v. Lang, 213 Ala. 412, 104 So. 770.

In my original opinion that case was fully reviewed. It held that the false concoction of a claim against an employer by falsely simulating an injury to the workman's eye, and its fraudulent establishment in judgment by perjured testimony, was subject to the established rule that the use of false testimony is not a ground for relief against the judgment thereby obtained. It was not then conceived that judgments under the Compensation Act were, as to their impeach-

ment for fraud, different from other judgments; and the decision in that case denies and forbids any such distinction.

The majority opinion ignores the Lang Case entirely. It not only makes no attempt to distinguish it from the instant case, but does not so much as mention it. It has been casually suggested, however, that the fraudulent simulation of the cause of action itself, the very fact of the injury for which compensation is claimed, is different from the fraudulent simulation of a dependent relationship to the deceased workman—different in such sense as to require the application of a different principle and a different rule of decision. But why is the fraudulent concoction of the very cause of action itself, by falsely simulating the injury without which there can be no lawful claim in favor of any one, less an outrage upon the law and the court, and less entitled to redress, than the fraudulent simulation of a mere relationship which creates a beneficiary of the claim? If there is any difference it would seem to be the other way, but in fact there is, and can be, no distinction in principle. The instant decision is in the teeth of the Lang Case, and if the decision herein is to stand the Lang Case should certainly be overruled. Its effect cannot be evaded by the superficial and unsubstantial distinctions suggested. It is in fact a denial of the very bases upon which the present decision is grounded.

As for fraudulently invoking and abusing the jurisdiction of the court, there is nothing to distinguish this case from any other case where false testimony is used to obtain a judgment, because in every suit jurisdiction is invoked.

The majority attach much importance to the theory that it is the proper function and duty of courts of equity to protect courts of law against the fraud of legal litigants. So far as concerns the retrial in equity of contested issues of fact already tried and determined in a court of law, in an adversary proceeding, it seems to me that courts of law need no such supervision or protection. They are co-ordinate in dignity and power with courts of equity, and are at least as competent to try all questions of fact committed to their jurisdiction, and their judgments ought to be final in their determination of issues of fact fairly tried, until reversed on appeal, or duly set aside by the trial court itself. "To this rule" Chief Justice Brickell declared 50 years ago, "this court has strictly, inflexibly, and uniformly adhered." Waring v. Lewis, 53 Ala. 615, 624.

The reasons now given for this decision are the reasons which have always been urged and rejected. If valid, they would require the reopening of every judgment rendered by a court of law, and the retrial of litigated issues of fact, whenever a bill is filed asserting that the plaintiff's witness or witnesses testified falsely, and that the defendant has

since discovered their falsity and was not negligent in not discovering it sooner. No one would deny the moral and legal propriety of such a retrial, if it could be assumed that the allegations of falsity were certainly true, and could be conclusively established. But all experience forbids such an assumption. The retrial would in most cases turn upon the number and credibility of the witnesses produced by the opposing litigants. It is better to intrust such a retrial to the court which rendered the judgment, and which alone has jurisdiction of the cause. For this the Legislature has made ample provision under sections 9520, 9521, of the Code.

In Keenum v. Dodson, 212 Ala. 146, 102 So. 230, the decree impeached was one setting apart a homestead exemption to a widow on her ex parte petition, falsely stating under oath that there were no heirs entitled to share in the estate. The bill of complaint showed that the complaining heirs "had no notice of this proceeding, were not before the court, and did not know of the order or decree made until a few months before the filing of this bill." In such a case any fraud, whether extrinsic or intrinsic, materially affecting the judgment, excites the jurisdiction of equity and justifies its cancellation. But the true ground therefor is not the making of a false claim merely, but the making and establishment of a false claim in a proceeding ex parte, or in rem, where the complaining parties were not before the court and had no opportunity to contest the claim—where, in short, there was no adversary trial. That case has been followed in the recent cases of Lester v. Stroud, 212 Ala. 635, 103 So. 692, and Quick v. McDonald, 214 Ala. 587, 108 So. 529, which were homestead proceedings in rem, and in which I concurred on the principle stated. That is the vital factor in cases of intrinsic fraud, and the purely fanciful distinction now sought to be made between the fraud manifested by a false petition or complaint, and the fraud manifested by the use of false testimony, is both illogical and unnecessary.

It is my earnest conviction that the new doctrine now embodied in this decision is fundamentally wrong, and will not endure.

GARDNER and THOMAS, JJ., concur in the foregoing dissent.