The Alabama State Bar appeals the decision of the Board of Disciplinary Appeals of the Alabama State Bar reversing the order of the Disciplinary Commission of the Alabama State Bar disbarring Derek Maurice Quinn, a member of the Alabama State Bar. We reverse and remand.
 Facts
Derek Maurice Quinn was admitted to the practice of law in the State of Alabama on September 28, 2001. The events that gave rise to the disciplinary action underlying this appeal occurred a few weeks shortly after he was admitted.
In the early morning hours of November 1, 2001, deputies with the Jefferson County Sheriff's Department stopped a vehicle that was being driven erratically. The driver attempted to elude the deputies and then turned into a driveway. The male driver and two female passengers jumped out of the vehicle and ran from the deputies. The driver was not apprehended, but the two female passengers were taken into custody. Because the female passengers were 14 years old and alcohol was found in the vehicle, the deputies took the minors into custody.
During an inventory search of the vehicle incident to its impoundment, the deputies found an eight-millimeter video camera. The deputies played the videotape, which depicted a Halloween party that had occurred earlier in the night on which the vehicle had been stopped and which showed several minors who appeared to be drunk and/or "high." The videotape also showed an adult male, later identified as Quinn, smoking a marijuana "blunt" and handing it to the minors to smoke.
When the deputies attempted to contact the parents of the girls, one of the girls, F.F.T., identified Quinn as her father. When Quinn arrived at the police station, he identified himself as F.F.T.'s father, and he attempted to take her home. The deputies recognized Quinn as the adult male in the videotape who was smoking *Page 1020 
the marijuana "blunt" and passing it to the minors to smoke.[1]
Quinn was arrested and charged with contributing to the delinquency of a minor, F.F.T. The charging instrument alleged that on October 31, 2001, Quinn, did
 "willingly aid, encourage or cause a child [F.F.T.] to become or remain delinquent, to induce said child to perform an act which would tend to cause [said child] to become or remain delinquent, to-wit: said Derek Maurice Quinn, smoked marijuana with said child, then handed to child to smoke and other children present to smoke also, in violation of [§] 12-15-13, Ala. Code [1975]."
On April 8, 2002, Quinn appeared with counsel in the Jefferson County Family Court and pleaded guilty to contributing to the delinquency of a minor. The court adjudged Quinn guilty and sentenced him to serve 90 days' imprisonment in the county jail. The court then ordered that the sentence be suspended and that Quinn serve six months on probation.
On August 20, 2002, the General Counsel of the Alabama State Bar petitioned the Disciplinary Commission pursuant to Rule 22, Ala. R. Disc. P., to suspend or disbar Quinn on the basis that he had been convicted of a "serious crime." The Disciplinary Commission set a date for the hearing on the petition before the Disciplinary Board of the State Bar. On the date set for the hearing, Quinn, by and through counsel, Thomas B. Hanes, filed by facsimile transmission a response to the petition in which he averred that the petition should be dismissed because, he said, it did not allege that he had been convicted of a "serious crime." He further denied he had been convicted of a "serious crime" and requested a hearing to determine whether his conviction involved a serious crime. On that same date, the State Bar filed an amended petition alleging that Quinn had been convicted of a "serious crime" and requested a hearing.
On November 13, 2002, the Disciplinary Board convened a hearing on the petition to determine whether Quinn's conviction for contributing to the delinquency of a minor, in violation of § 12-15-13, Ala. Code 1975, constituted a "serious crime" within the meaning of Rule 22(a)(2), Ala. R. Disc. P. Quinn did not appear at the hearing. On November 18, 2002, the Disciplinary Board entered an order finding that the offense Quinn had been convicted of was a "serious crime" for the purpose of Rule 22(a)(2).
On November 22, 2002, Quinn, with new counsel, T. Jefferson Deen III, appeared before the Disciplinary Commission, which had convened to determine his discipline, and requested a continuance in order to seek relief from the Disciplinary Board's determination that he had been convicted of a serious crime. The Disciplinary Commission granted the continuance. On December 2, 2002, Quinn filed with the Disciplinary Board a motion for relief from the Board's order. The State Bar filed a response in opposition to the motion for relief, and Quinn filed his reply. On December 31, 2002, the Disciplinary Board entered an order denying Quinn's motion for relief.
On January 3, 2003, the Disciplinary Commission conducted a hearing pursuant to Rule 22(a), Ala. R. Disc. P., to determine Quinn's discipline. The State Bar presented evidence indicating that Quinn *Page 1021 
had pleaded guilty to contributing to the delinquency of a minor and that the underlying conduct involved "giving away" marijuana to the minor. Quinn testified at the hearing that despite his plea of guilty to the offense of contributing to the delinquency of a minor based on his smoking marijuana and giving it to the minor, there was no marijuana at his residence, that he and the minors were playing a joke on some "tough street gang type boys" at the Halloween party, and that they were smoking a cigarette that contained oregano, not marijuana. He stated that while he was guilty of "poor parenting skills" and stupidity, he did not believe that his conduct was illegal or that it warranted disbarment.
At the hearing, the State Bar contended that Quinn's conduct required disbarment because it fell squarely under Standard 5.1 of the Alabama Standards for Imposing Lawyer Discipline. The State Bar argued that disbarment was appropriate in Quinn's case because "disbarment is appropriate when a lawyer engages in a serious criminal conduct, . . . which includes the distribution of a controlled substance." The State Bar further argued that aggravating factors to be considered in determining Quinn's discipline included the fact that the minor in this case was a 14-year-old girl, that in committing the offense Quinn had also made marijuana available to several 13- and 14-year-old children, that Quinn was a recent admittee to the Alabama State Bar and therefore should have had a "heightened sense of professional responsibility," that he submitted false evidence in support of a pleading submitted to the Disciplinary Board, and that he refused to acknowledge responsibility for the wrongful nature of his conduct.
On January 13, 2003, the Disciplinary Commission ordered that Quinn be disbarred, stating:
 "4. That Rule 5.11 of the Alabama Standards for Imposing Lawyer Discipline provides as follows:
"`Disbarment is generally appropriate when:
 "`(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses;' (emphasis added [by Disciplinary Commission])
 "5. That based on Rule 5.11 of the Alabama Standards for Imposing Lawyer Discipline, . . . absent some compelling reason to depart from that standard, the appropriate discipline is disbarment.
 "6. That [Quinn] attempted to demonstrate that he was not guilty of the underlying facts upon which the conviction was based. That based upon the evidence presented to the Commission in the form of the testimony of [Quinn], the records of the court of Jefferson County, the videotape depicting the underlying facts of the conviction in that court, this Commission finds that the testimony of [Quinn] is totally without credibility.
 "7. That the Commission finds that there are no facts that were presented to the Commission which, under Standard 9.3 of the Lawyer Discipline Standards would be considered as mitigating factors in imposing the appropriate penalties.
 "8. That the Commission finds that there were the following aggravating *Page 1022 
factors under Standard 9.2 of the Lawyer Discipline Standards.
 "(a) Under Standard 9.22(f) the Commission finds that there was a submission of false evidence, false statements, or other deceptive practices during the disciplinary process. This finding is based on the finding of the Commission that the testimony presented by [Quinn] at the hearing was totally lacking in credibility, and it is the finding of the Commission that said testimony was false.
 "(b) Under 9.22(g) of the Lawyer Discipline Standards, the Commission finds refusal to acknowledge wrongful nature of conduct based upon the continued denial of wrongdoing by [Quinn]. It is clear that he has failed to acknowledge the wrongful nature of his conduct and failed to acknowledge his true conduct in this proceeding.
 "(c) Under 9.22(h), vulnerability of the victim, the Commission finds that the victims in this case, i.e., minors, some of [whom] were under the direct supervision and control of [Quinn] [and that this aggravating circumstance] exists. In addition to the obvious victims, i.e., the minors involved in the situation which resulted in the criminal conviction, both society at large, and the Bar in particular, suffer irreparable injury from conduct of this nature which impacts our society as a whole, and particularly impacts an already beleaguered profession by adversely reflecting thereon.
 "9. It is the unanimous finding of this Commission that there is no reason why [Quinn] should be suspended as opposed to disbarred."
Quinn filed a notice of appeal to the Board of Disciplinary Appeals.
On February 27, 2004, the Board of Disciplinary Appeals reversed the determination of the Disciplinary Commission that Quinn should be disbarred, holding that the discipline of disbarment was "manifestly excessive." The Board of Disciplinary Appeals stated:
 "Quinn challenges the order of the Disciplinary Commission, disbarring him from the practice of law as excessive. This case is clearly tragic, since Quinn was only admitted to the bar on September 28, 2001, shortly thereafter engaged in the conduct which formed the basis for the criminal offense, and pleaded guilty on April 8, 2002. . . .
". . . .
 "An extensive hearing was conducted by the Disciplinary Commission in which evidence as to both aggravating and mitigating factors [was] received. Quinn attempted to demonstrate that he was not guilty of the offense, but significantly the Disciplinary Commission found his testimony to be `totally without credibility.' Further, the Disciplinary Commission considered that Quinn had submitted false statements during the disciplinary process by his attempt to justify his conduct in the underlying events. Quinn has failed to show that these factual findings are clearly erroneous. This Board reviewed the relevant portions of the videotape (which is part of the record) and it reflects truly disturbing conduct by Quinn. It is understandable that when the Commission rejected Quinn's testimony that the substance was not marijuana, but rather some harmless material, it was confronted with a case warranting strong discipline.
 "After careful review and consideration of all arguments, this Board concludes that Quinn has met his burden of demonstrating that the decision to disbar is manifestly excessive. This Board *Page 1023 
agrees with the State Bar that this was a crime involving moral turpitude. . . .
 "The Bar argues that disbarment was appropriate because the crime involved as a necessary element `the sale, distribution or importation of controlled substances.' Having viewed the videotape ourselves, and considering all the facts as found by the Disciplinary Board and the Commission, we simply do not believe that Quinn's conduct, while bizarre and inappropriate, involved distribution as a necessary element of the misdemeanor charge.
 "This Board concludes that under all of the circumstances, the appropriate punishment is a period of suspension from the practice of law of six months. Such a suspension appears more in line with and consistent with penalties imposed in other cases, and fully accomplishes the purpose of the disciplinary rules. Quinn made a very serious mistake, but not one which should preclude him from the bar for at least five years. His lack of truthfulness before the Disciplinary Commission was a second egregious act thus warranting a significant period of suspension. At the end of such suspension, Quinn must seek reinstatement and establish again that he has the character and fitness to practice law."
 Standard of Review "We conclude that whether the Board of Appeals properly applied the `clearly erroneous' standard of review to the Disciplinary Board's findings of fact is a question of law. Likewise, all other legal conclusions in the final order of the Board of Appeals present questions of law to us. This Court reviews questions of law de novo. National Ins. Ass'n v. Sockwell, 829 So.2d 111 (Ala. 2002); Moss v. Williams, 822 So.2d 392 (Ala. 2001); and Reed v. Board of Trustees of Alabama State Univ., 778 So.2d 791 (Ala. 2000). Such a de novo review results in this Court's applying the same standard the Board of Appeals applied as to all questions of law, including the application by the Board of Appeals of the `clearly erroneous' standard to the Disciplinary Board's findings of fact."
Tipler v. Alabama State Bar, 866 So.2d 1126, 1137 (Ala. 2003).
 Discussion
The State Bar contends that the Board of Disciplinary Appeals erred in concluding that the sanction of disbarment imposed by the Disciplinary Commission was manifestly excessive. Specifically, the State Bar argues that the sanction of disbarment was not manifestly excessive when Quinn's conduct is considered under the Alabama Standards for Imposing Lawyer Discipline.
Rule 22(a)(2), Ala. R. Disc. P., provides that the Disciplinary Commission shall disbar or suspend a lawyer if the lawyer has been convicted of a serious crime, as that term is defined in Rule 8, Ala. R. Disc. P. Standards 5.1 and 5.11(a) of the Alabama Standards for Imposing Lawyer Discipline provide that absent aggravating or mitigating circumstances, disbarment is generally appropriate when "a lawyer engages in serious criminal conduct, a necessary element of which includes . . . the sale, distribution or importation of controlled substances. . . ."
Here, it is undisputed that Quinn's conviction for contributing to the delinquency of a minor constituted a conviction for a serious crime under Rule 22(a)(2), Ala. R. Disc. P. Therefore, the only issue before us is whether disbarment is the proper discipline. To determine the proper discipline, we must decide whether a necessary element of Quinn's crime — contributing to the delinquency of a minor — was the "distribution" of a controlled substance. After reviewing *Page 1024 
the evidence, including the videotape, we conclude as a matter of law that "distribution" of a controlled substance was a necessary element of Quinn's conviction for contributing to the delinquency of a minor.
The videotape establishes that Quinn was present in the group of minors when a minor rolled the marijuana "blunt," that Quinn smoked the marijuana "blunt," and that he handed the "blunt" to another minor to smoke. While the minor who rolled the "blunt" claimed ownership of the marijuana, Quinn actively encouraged and engaged in the smoking and "giving away" of the marijuana "blunt."
In the State of Alabama "unlawful distribution of a controlled substance" includes the furnishing or giving away of a controlled substance. § 13A-12-211, Ala. Code 1975. Marijuana is a controlled substance. See § 20-2-23(3)(j), Ala. Code 1975. "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense . . . [h]e . . . induces or causes such other person to commit the offense; or . . . [h]e aids or abets such other person in committing the offense." §13A-2-23(1) and (2), Ala. Code 1975. An accomplice is just as guilty of the offense as is the principal offender. See Garrisonv. State, 521 So.2d 997 (Ala.Crim.App. 1986).
Here, the evidence, especially the videotape, clearly establishes that Quinn was at a minimum an accomplice to the distribution of marijuana to F.F.T. and other minors and that this conduct was a necessary element of his conviction for contributing to the delinquency of F.F.T. The videotape establishes that a large bag of marijuana was at Quinn's house on the night of the offense. The evidence further indicates that Quinn was the only adult — the only authority figure — at the residence that night. Quinn was aware of the presence of marijuana at his residence, watched a minor "roll" the marijuana into a "blunt," smoked the marijuana "blunt," and "gave away" the marijuana "blunt" to F.F.T. and on at least two other occasions to other minors for them to smoke. Quinn also encouraged the minors to eat candy to disguise their breath before their mothers picked them up. Quinn in his conversation with the minors further encouraged the distribution and smoking of the marijuana by the minors by remarking that one of the minors "had great suction" when smoking the blunt. He further told the minors on the videotape, "This weekend we'll get some good stuff." Immediately after Quinn made this remark, F.F.T. identified the source of the "good stuff."[2] Quinn's statements and his conduct clearly establish that while he may not have been a principal in the distribution of the marijuana, he was definitely an accomplice to the furnishing and giving away of the marijuana to F.F.T. and the other minors and that this conduct was a necessary element of his conviction for contributing to the delinquency of F.F.T. Therefore, in accordance with Standard 5.11 of the Alabama Standards for Imposing Lawyer Discipline, even without considering any aggravating circumstances, we conclude that disbarment is the appropriate discipline.
Moreover, the propriety of the discipline of disbarment becomes unquestionable in light of the aggravating circumstances. The evidence clearly establishes that there are no mitigating circumstances to consider and that the following aggravating circumstances exist: that *Page 1025 
Quinn refused to accept responsibility for his conduct, see Standard 9.22(g); that he submitted false evidence and testimony during the disciplinary process, see Standard 9.22(f); and that the victim of his conduct was a vulnerable 14-year-old girl who had been entrusted into his care, see Standard 9.22(h). Clearly, even if disbarment were not the appropriate punishment for the offense alone, disbarment is required when the aggravating circumstances are considered.
"`"A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."' Anderson v. City of Bessemer City,N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), quoting United States v. United States Gypsum Co.,333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)." Tipler,866 So.2d at 1137. Here, the evidence clearly supports the Disciplinary Commission's decision to punish Quinn by disbarment; therefore, the Board of Disciplinary Appeals erred in overriding the Commission's decision and ordering that Quinn be suspended for six months instead of disbarred.
 Conclusion
For the foregoing reasons, we reverse the order of the Board of Disciplinary Appeals and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and LYONS, HARWOOD, SMITH, and BOLIN, JJ., concur.
SEE, WOODALL, and PARKER, JJ., concur in the result.
[1] When Quinn arrived at the station, he was wearing the same clothes he was wearing in the videotape. The deputies later learned that Quinn is not F.F.T.'s father; rather, he is her mother's former boyfriend. The evidence indicates that F.F.T.'s mother had sent F.F.T. to live with Quinn so he could be a "positive" influence on her.
[2] Although Quinn testified before the Disciplinary Commission that this statement was made in reference to refreshments served at the party, it is clear from the videotape that Quinn's statement and F.F.T.'s identification of the source of the "good stuff" were references to acquiring more marijuana.