On Rehearing Ex Mero Motu

PER CURIAM.
On December 16, 2011, this Court issued an opinion in this case, and on December 19, 2011, it issued an order placing this case on rehearing ex mero motu and withdrawing the December 16, 2011, opinion. We now issue the following opinion.
Albert Linch Jordan appeals from an order of the Disciplinary Board (“the Board”) of the Alabama State Bar Association (“the Bar”)[1] determining that Jordan has been convicted of a “serious crime” for purposes of Rule 22(a)(2), Ala. R. Disc. P., which provides that the Disciplinary Commission of the Bar shall disbar or suspend a lawyer who has been convicted of a “serious crime.” Specifically, Rule 22(a)(2) provides: “The Disciplinary Commission shall disbar or suspend a lawyer ... [i]f the lawyer’s conviction for a ‘serious crime,’ as defined in Rule 8 of these Rules, has become final ... in any court of record of this state or any other state, or of the United States, or of a territory of the United States.” Rute 8(c)(2), Ala. R. Disc. P., defines a “serious crime” as:
“(A) A felony;
“(B) A lesser crime involving moral turpitude;
“(C) A lesser crime, a necessary element of which, as determined by the statutory or common-law definition of such crime, involves interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or
*726 “(D) An attempt, a conspiracy, or the solicitation of another to commit a ‘serious crime.’ ”
Jordan seeks a reversal of the Board’s determination. We reverse and remand.

Facts and Procedural History

The present proceeding originates from a long-running dispute related to an election contest challenging the 1998 election of the Jefferson County sheriff. See, e.g., Eubanks v. Hale, 752 So.2d 1113 (Ala.1999). The Board’s order sets out the uncontroverted material facts and the procedural history of this matter as follows:
“Mr. Jordan was retained by Jimmy Woodward, at the time the Sheriff of Jefferson County, Alabama, to contest the results of the 1998 General Election. The basis for the contest was Sheriff Woodward’s belief that felons not eligible to vote in fact voted by absentee ballot.
“As a result of Mr. Jordan’s representation of Sheriff Woodward, an indictment was returned in the United States District Court for the Northern District of Alabama alleging that both Mr. Jordan and Sheriff Woodward utilized employees of the Sheriffs office to access the National Crime Information Center database (NCIC), thereby obtaining criminal records of certain individuals who voted by absentee ballot in the referenced election. The indictment charged violation of 18 U.S.C. § 641 and § 371.
“After trial by jury, Mr. Jordan was found guilty of conspiring to violate and of violating 18 U.S.C. § 641. Mr. Jordan received a sentence of probation for six (6) months and a Five Hundred Dollar ($500.00) fine.
“Mr. Jordan appealed the conviction to the Eleventh Circuit.[2] He asserted that the indictment should have been dismissed, claiming that it failed to provide him with the notice necessary to enable a defense, that the evidence was insufficient to support his conviction and [that] the District Court erred by refusing to give certain jury instructions requested by Mr. Jordan. These arguments were considered and rejected by the Court resulting in Mr. Jordan’s conviction being affirmed. In affirming the conviction, the Court noted since the value of the property converted was less than One Thousand Dollars ($1,000.00), the conviction was of a Class A Misdemeanor.” [3]
(Footnote omitted.)
Following the affirmance of Jordan’s convictions by the United Stated Court of Appeals for the Eleventh Circuit, the General Counsel of the Bar, on May 12, 2006, petitioned the Disciplinary Commission to suspend or disbar Jordan pursuant to Rule 22(a)(2) on the basis that he had been convicted of a “serious crime.” In his answer to the Bar’s petition, Jordan asserted several defenses and “denie[d] that he [had] been convicted of any ‘serious offense.’ ” The matter then went before the Board for a determination as to whether Jordan had been convicted of a “serious crime” as that term is defined in Rule *727 8(c)(2). See Rule 22(a)(2) (“Whether a lawyer’s conviction involves a serious crime as defined in Rule 8(c)(2)(B), (C), and (D) shall be made by the Disciplinary Board upon petition by the General Counsel. The Disciplinary Board may conduct a hearing to assist it in making this determination.”). At the hearing conducted by the Board, the Bar indicated that it was proceeding against Jordan primarily pursuant to Rule 8(c)(2)(C) and (D), i.e., on grounds that Jordan’s crimes constituted lesser crimes involving fraud, misappropriation, and/or theft and conspiracy. Following the hearing, the Board on September 16, 2010, entered an order containing a unanimous finding that “[t]he statutory definition of the conduct prohibited by § 641 clearly requires the knowing conversion of a thing of value or the receipt, concealment or retention of the same with the intent to convert” and that, correspondingly, “Jordan’s conviction ... required theft or misappropriation.” Based on that determination, the Board’s order also included the following conclusions of law:
“1. The subject crimes, i.e., convictions of 18 U.S.C. § 641 and § [371] do not involve moral turpitude and therefore are not serious crimes as defined by Rule 8(c)(2)(B).
“2. The conviction of violating 18 U.S.C. § 641 is a serious crime as defined by Rule 8(e)(2)(C).
“3. The conviction of violating 18 U.S.C. § [371] is a serious crime as defined by Rule 8(c)(2)(D).”
Jordan timely filed a notice of appeal.

Standard of Review

The parties agree that the standard of review to be applied to Jordan’s appeal is a de novo review. See Alabama State Bar v. Tipler, 904 So.2d 1237, 1240 (Ala.2004) (“The Board of Disciplinary Appeals made legal conclusions regarding Rule 8(c)(2)(C) and Rule 22(a)(2), Ala. R. Disc. P.; therefore, we review those conclusions de novo.”). See also Tipler v. Alabama State Bar, 866 So.2d 1126, 1137 (Ala.2003).

Discussion

On appeal, Jordan contends that, contrary to the Board’s decision, his misdemeanor convictions are not “serious crimes.” Additionally, he argues that, as used in Rule 22, “the term ‘serious crime’ ... [is] unconstitutionally vague.” Finally, Jordan contends that the Board’s decision was contrary to “precedents” established in previous disciplinary proceedings and, thus, that its decision denied him due process of law.
Although the indictment charging Jordan with the offenses the Board determined to be “serious crimes” is not included in the record on appeal, the charges were briefly explained by the United States Court of Appeals for the Eleventh Circuit in United States v. Jordan, 582 F.3d 1239 (11th Cir.2009):
“On June 21, 2000, a Northern District of Alabama grand jury returned an indictment charging [Jefferson County Sheriff Jimmy] Woodward and Jordan, in Count One, with conspiring, in violation of 18 U.S.C. § 371, to violate 18 U.S.C. § 641 by receiving, retaining, and converting NCIC [National Crime Information Center] records to their own use. Count Two charged Woodward with conveying the NCIC records to Jordan, and Count Three charged Jordan with receiving them, both acts in violation of § 641.”
582 F.3d at 1244 (footnotes omitted; emphasis added). The Eleventh Circuit Court of Appeals then summarized the pertinent factual underpinnings of the indictment charging Jordan:
“Count one, alleging a conspiracy to violate 18 U.S.C. § 641, tracked the language of § 641 and asserted that the defendants required employees of the *728 Sheriffs office to access the NCIC [National Crime Information Center] and ACJIS [Alabama Criminal Justice Information System] databases, obtain printouts of the criminal records of absentee voters, and then deliver the printouts, which as property of the United States had a value in excess of $1,000, to Jordan for use in Woodward’s election contest. ... The overt acts committed in furtherance of the conspiracy included the November 5, 1998 telephone conversation between [Royce] Fields[, the assistant sheriff,] and Jordan, the completion of the NCIC searches, the delivery of the information they disclosed to Jordan, and [a] meeting with District Attorney Brown .... In Counts Two and Three, respectively, the indictment alleged that Woodward conveyed to Jordan and Jordan received from Woodward a ‘thing of value of the United States, that is, information contained in the NCIC records.’ ... ”
582 F.Sd at 1246.[4]
First, we address Jordan’s contention that his conviction for violating 18 U.S.C. § 641 does not constitute a “serious crime” as that term is defined in Rule 8(c)(2)(C).
This is not the first time this Court has been called upon to review the issue whether “a crime less than a felony and not involving moral turpitude [may] be considered a ‘serious crime’ ” as that term is defined in Rule 8. Tipler, 904 So.2d at 1239. See also Alabama State Bar v. Quinn, 926 So.2d 1018 (Ala.2005). In Tipler, in which we were also applying Rule 22(a)(2) and Rule 8(c)(2), we stated “[t]he dispositive issue” in that case as “whether Tipler’s conviction ... [was] a ‘serious crime’ within the meaning of Rule 8(c)(2)(C).” 904 So.2d at 1240. In Tipler, we stated that, in making its determination whether the crime falls within the definition of a “serious crime” found in Rule 8(c)(2)(C), Ala. R. Disc. P., the Board “is required to consider only the necessary elements of the crime.” 904 So.2d at 1241. We further explained in Tipler that a review of the plain language of the charging statute will reveal the necessary elements: “Rule 8(c)(2)(C) defines a crime as a ‘serious crime’ if the necessary elements of the *729 statutory definition of the crime involve [‘misappropriation, or theft’].” Id. at 1241.
At the underlying hearing, the Bar argued, as it does on appeal, that, under the plain language of 18 U.S.C. § 641, the conversion underlying Jordan’s conviction for violating that statute amounted to “theft” or “misappropriation” of property, which meets the definition of a “serious crime” for purposes of Rule 8(c)(2)(C). As noted above, this Court has previously determined that neither the Board nor this Court is “free to examine the degree of ‘seriousness’ of the crime,” but we are, instead, “required to consider only the necessary elements of the crime when determining whether the crime falls within the definition of a ‘serious crime’ found in Rule 8(c)(2)(C), Ala. R. Disc. P.” Tipler, 904 So.2d at 1241. Therefore, because the elements of the charged offense are determinative of the issue, we move directly to an analysis of the charging statute, 18 U.S.C. § 641.
18 U.S.C. § 641 provides:
“Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
“Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
“Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.
“The word ‘value’ means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.”
Manifestly, § 641 describes different scenarios whereby an individual might be deemed guilty of a violation of the statute. Notably, the first paragraph of that section states that culpable conduct occurs whenever the offender “embezzles, steals, purloins, or knowingly converts to his use or the use of another ... any record, voucher, money, or thing of value of the United States or of any department or agency thereof,” while the second paragraph is restricted to situations where an offender “receives, conceals, or retains” such an item “with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted.” Thus, a comparison between paragraph one and paragraph two of § 641 leads readily to the conclusion that paragraph two does not involve the culpable conduct of actual embezzlement, stealing, purloining, or converting but, rather, involves only the culpable conduct of receiving, concealing, or retaining property known to have been embezzled, stolen, purloined, or converted with the intent thereafter to convert it to the offender’s own use or gain.
It is apparent from a reading of Jordan that the Eleventh Circuit Court of Appeals deemed that Jordan’s conduct and his resulting convictions under count one and count three, respectively, implicated only the following portions of the first two paragraphs of § 641:
“Whoever ... knowingly converts to his use or the use of another ... any record ... or thing of value of the United States or of any department or agency thereof ...; or
*730 “Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been ... converted.”
582 F.Sd at 1242 n. 1 (stating that 18 U.S.C. § 641 “states, in pertinent part”). Given the abbreviated version of paragraph two provided by the Eleventh Circuit as being that portion “pertinent” to Jordan’s conviction under count three for violating § 641, the only issue relevant to his guilt under § 641 (count three) was whether he had received, concealed, or retained the National Crime Information Center (“NCIC”) materials “with intent to convert [them] to his use or gain, knowing [them] to have been ... converted.”[5]
Although the record does not contain the jury’s verdict returned against Jordan in the United States District Court, the resulting judgment entered by the district court on the jury’s verdict reflects that Jordan was adjudged guilty of “Receiving a Thing of Value of the United States (Wrongfully Converted NCIC Records) with the Intent to Convert to His Own Use” in violation of § 641, as charged in count three of the indictment. Similarly, the petition instituting the underlying disciplinary proceeding against Jordan asserted, with respect to Jordan’s conviction under count three, that the conviction constitutes a “conviction of Receiving a Thing of Value of the United States (Wrongfully Converted NCIC Records) with the Intent to Convert to His Own Use.”
As noted, paragraph two of § 641 — the portion of the statute apparently underpinning the charge against Jordan in, and his conviction under, count three — authorizes the conviction of one who “receives, conceals, or retains [in this case, the NCIC records,] with intent to convert [them] to his use or gain, knowing [them] to have been embezzled, stolen, purloined or converted.” Thus, Jordan’s conviction under count three appears to have been based on his receiving the NCIC records with the intent to convert them, not his actual subsequent “use” or “conversion]” of them.[6]
Therefore, as best we are able to discern from Jordan and from the attachments to the petition instituting the underlying disciplinary proceeding, the elements neces *731 sary to Jordan’s conviction under paragraph two of § 641 did not include as “a necessary element” theft or “misappropriation.”[7] Thus, applying Tipler, we are unable to conclude, as Rule 8(c)(2)(C) requires, that the statutory definition of the crime of which Jordan was convicted under count three, predicated, as it apparently was, solely on paragraph two of § 641, involved as “a necessary element” the conduct of “misappropriation”; we are unable to conclude, therefore, that Jordan’s conviction under paragraph two of § 641 was a conviction for a “serious crime” as that term is defined in Rule 8(c)(2)(C).
Jordan further contends that his conviction for violating 18 U.S.C. § 371,[8] as charged in count one, does not constitute a “serious crime” as defined in Rule 8(c)(2)(D). Jordan was convicted of conspiring with Woodward to violate 18 U.S.C. § 641 “by receiving, retaining, and converting NCIC records to their own use.” 582 F.3d at 1244. At the hearing before the Board, the Bar contended that, considering the plain language of 18 U.S.C. § 371, Jordan’s conviction under that statute was a conviction for crimes involving both theft and conspiracy for purposes of Rule 8(c)(2)(D).
Rule 8(c)(2)(D) defines a “serious crime” as “[a]n attempt, a conspiracy, or the solicitation of another to commit a ‘serious crime.’ ” The Bar contends that a Tipler analysis is proper for a determination under Rule 8(c)(2)(D); i.e., according to the Bar, whether a conviction for conspiracy with another to commit a “serious crime” is a “serious crime” as defined in Rule 8(c)(2)(D) rests solely on an examination of the necessary elements of the crime. Our analysis in Tipler, however, addressed the definition of a “serious crime” as defined in Rule 8(c)(2)(C), and we decline to extend Tipler to a determination of the question under Rule 8(c)(2)(D).
When considering whether a conviction for conspiracy to commit a “serious crime” is a “serious crime” as defined in Rule 8(c)(2)(D), the analysis must include, in addition to an examination of the elements of the offense, consideration of the facts supporting and the circumstances surrounding the conspiracy conviction.
“Decades ago the eminent jurist Learned Hand referred to conspiracy as ‘[the] darling of the modern prosecutor’s nursery.’ Harrison v. United States, 7 F.2d 259, 263 (2d Cir.1925). The validity of that observation has not diminished. See, e.g., United States v. Stoner, 98 F.3d 527, 533 (10th Cir.1996) (‘It is clear that a conspiracy charge gives the prosecution certain unique advantages and that one who must defend against such a *732 charge bears a particularly heavy burden.’)”
United States v. Henderson, 794 F.Supp.2d 1236, 1287 (N.D.Okla.2011). In Krulewitch v. United States, 336 U.S. 440, 445-47, 69 S.Ct. 716, 93 L.Ed. 790 (1949), Justice Jackson in his special concurrence described the offense of conspiracy as “elastic, sprawling and pervasive.” He further opined:
“[The] history [of the federal law of conspiracy] exemplifies the ‘tendency of a principle to expand itself to the limit of its logic.’ The unavailing protest of courts against the growing habit to indict for conspiracy in lieu of prosecuting for the substantive offense itself, or in addition thereto, suggests that loose practice as to this offense constitutes a serious threat to fairness in our administration of justice.
“The modern crime of conspiracy is so vague that it almost defies definition. Despite certain elementary and essential elements, it also, chameleon-like, takes on a special coloration from each of the many independent offenses on which it may be overlaid. It is always ‘predominantly mental in composition’ because it consists primarily of a meeting of minds and an intent.
[[Image here]]
“... It is not intended to question that the basic conspiracy principle has some place in modern criminal law .... However, ... the looseness and pliability of the doctrine present inherent dangers which should be in the background of judicial thought wherever it is sought to extend the doctrine to meet the exigencies of a particular case.
“Conspiracy in federal law aggravates the degree of crime over that of uncon-certed offending. ...
“Thus the conspiracy doctrine will incriminate persons on the fringe of offending who would not be guilty of aiding and abetting or of becoming an accessory, for those charges only lie when an act which is a crime has actually been committed....
[[Image here]]
“A recent tendency has appeared in this Court to expand this elastic offense and to facilitate its proof. In Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 [(1946)], it sustained a conviction of a substantive crime where there was no proof of participation in or knowledge of it, upon the novel and dubious theory that conspiracy is equivalent in law to aiding and abetting.
[[Image here]]
“Of course, it is for prosecutors rather than courts to determine when to use a scatter gun to bring down the defendant, but there are procedural advantages from using it which add to the danger of unguarded extension of the concept.
[[Image here]]
“The trial of a conspiracy charge doubtless imposes a heavy burden on the prosecution, but it is an especially difficult situation for the defendant.”
336 U.S. at 445-51 (footnotes omitted). See also 2 Wayne R. LaFave, Substantive Criminal Law § 12.1(b), at 256 (2d ed. 2003) (“[I]t is clear that a conspiracy charge gives the prosecution certain unique advantages and that one who must defend against such a charge bears a particularly heavy burden.”).
As the foregoing recognizes, the broadness, elasticity, and pliability of the offense of conspiracy provide the prosecution with unique advantages not present when charging and prosecuting other offenses and place an unusually heavy burden on the defendant. To assure fairness and equity in an attorney-disciplinary proceeding, specifically when the determination is whether a conspiracy conviction consti *733 tutes a “serious crime” as defined in Rule 8(c)(2)(D), the analysis must include not only consideration of the elements of the conspiracy offense, but also consideration of the facts supporting and the circumstances surrounding the conviction. Examination of both the elements and these factors does not diminish the legitimacy of the conspiracy conviction, but it guarantees fairness and equity in attorney-discipline proceedings when determining whether a conviction for an offense that is so broad, loose, and pliable constitutes a “serious crime.” See Florida Bar v. Cox, 794 So.2d 1278, 1286 (Fla.2001) (“[L]awyer discipline must protect the public from unethical conduct but at the same time not deny the public the services of a qualified attorney.” (citing Florida Bar v. Pahules, 238 So.2d 130, 132 (Fla.1970) (emphasis added))).
Here, in reaching its finding that Jordan’s conviction for violating 18 U.S.C. § 371 constituted a “serious crime” as that term is defined in Rule 8(c)(2)(D), the Board limited its analysis to the necessary elements of the offense. Therefore, we reverse the Board’s finding that Jordan’s conspiracy conviction is a “serious crime” as that term is defined in Rule 8(c)(2)(D), and we remand the case for further proceedings consistent with the foregoing.
As to Jordan’s remaining issues on appeal, this Court finds them to be without merit, to be unpreserved,[9] or to be unsupported by citation to legal authority as required by Rule 28(a)(10), Ala. R.App. P.

Conclusion

The Board’s finding that Jordan’s conviction for violating 18 U.S.C. § 641 constituted a “serious crime” as defined by Rule 8(c)(2)(C) is reversed; the Board’s finding that Jordan’s conviction for violating 18 U.S.C. § 371 constituted a “serious crime” as defined by Rule 8(c)(2)(D) is also reversed; and this case is remanded for proceedings consistent with this opinion.
ON REHEARING EX MERO MOTU: REVERSED AND REMANDED.
STUART, PARKER, and WISE, JJ., and HARWOOD and THOMAS, Special Justices,* concur.
SHAW and MAIN, JJ., concur in part and dissent in part.
MALONE, C.J., and WOODALL, BOLIN, and MURDOCK, JJ., recuse themselves.

. See Rule 12(f)(1), Ala. R. Disc. P. ("The parties have a right to appeal an adverse decision of the Disciplinary Board ... to the Supreme Court of Alabama ....").

. Jordan appealed both the conviction for violating 18 U.S.C. § 641 and the conviction for violating 18 U.S.C. § 371. The United States Court of Appeals for the Eleventh Circuit affirmed both convictions. See discussion infra.

. The federal indictment charged Jordan with felony offenses because the value of the property converted was alleged to be in excess of $1,000. At trial, the prosecution presented evidence indicating that the property was valued in excess of $1,000. The jury, however, did not make a finding as to the value of the property, and the prosecution conceded that the convictions were for misdemeanor offenses.

. In United States v. Jordan, 316 F.3d 1215 (11th Cir.2003), in which the Eleventh Circuit Court of Appeals reinstated the indictment against Woodward and Jordan, which had been dismissed by the district court, the specific charges contained in the indictment were explained as follows:
"Woodward and Jordan were each charged in three counts of the indictment. Count One alleged that both Woodward and Jordan conspired with each other to knowingly convert to their own use records and things of value of the United States of a value in excess of $1,000; to convey, without authority, records and things of value of the United States of a value in excess of $1,000; to receive and retain, with the intent to convert to their own use, records and tilings of value of the United States, of a value in excess of $1,000, knowing them to be converted; to knowingly engage in misleading conduct towards others with the intent to influence the testimony of persons in future official proceedings; and to defraud the United States, that is, use deceit, craft, trickery, overreaching and dishonest means to interfere with and impair lawful government functions, that is, the government’s control of the NCIC records and the information contained therein, all in violation of 18 U.S.C. § 371.
"Count Two charged that Woodward knowingly and without authority conveyed to Jordan a thing of value of the United States (the NCIC records) knowing that he had no authority to do so, in violation of 18 U.S.C. §§ 2 & 641.
"Count Three charged that Jordan knowingly received and retained a thing of value of the United States (the NCIC records), knowing them to have been wrongfully converted, with the intent to convert them to his own use, in violation of 18 U.S.C. §§ 2 & 641.”
316 F.3d at 1224 n. 7.

. We note the vagueness of the Eleventh Circuit’s identification of the pertinent portions of the applicable statute in that that Court does not state, with particularity, that only a single one of the paragraphs identified as pertinent to the appeal applies to Jordan. This may be explained by the fact that the Court was often discussing the charges against Jordan and Woodward collectively. Similarly, as reflected by Jordan’s brief to this Court, in which he purports to appeal from a self-styled "conversion” conviction, and by the Bar’s own apparent understanding of Jordan’s conviction, there appears to be some confusion as to whether Jordan was convicted of generally violating § 64 Í or of specifically violating only paragraph two of that section. However, upon careful review of the limited materials before us, we conclude that, from all appearances, Jordan was, in fact, charged only with violating paragraph two, i.e., with receiving or retaining the converted materials.

. The Bar argues in its brief that Jordan "was found guilty of receiving a thing of value and converting it to his own use.” (Bar’s brief, at p. 16.) A defendant's actual conversion of property to his own use is not a necessary element of the offense in paragraph two in § 641 — the portion of the statute on which Jordan's count-three conviction was based— and nowhere else in the record is there a formal finding with respect to count three that Jordan was guilty of "converting” the NCIC records to his own use.
We do not, however, hold that Jordan's conduct would not sustain a finding of a conversion. In fact, we note that, in rejecting Jordan’s challenge to the sufficiency of the evidence sustaining his conviction, the Eleventh Circuit specifically found that the evidence established that "Jordan subsequently used some of the information the printouts disclosed to prosecute Woodward’s election contest.” Jordan, 582 F.3d at 1247.

. We note, however, that had Jordan’s count-three conviction been based, instead, on paragraph one of § 641, an alternative necessary element of the crime would have involved conversion, which we would have no trouble equating to "misappropriation.” Similarly, had Jordan’s count-three conviction been based on one or more of the other three forms of wrongful conduct addressed by paragraph one — ’’embezzle[ment], stealfing], or pur-loinfment]” — then a "serious crime” would have been established under Rule 8(c)(2)(C) not only as to "misappropriation” but also as to "theft.”

. Section 371 states:
"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.
“If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemean- or.”

. See Alabama State Bar v. Hallett, 26 So.3d 1127, 1140 (Ala.2009), and Kyser v. Harrison, 908 So.2d 914, 918 (Ala.2005).