SHAW, Justice
(concurring in part and dissenting in part).
I concur with that portion of the main opinion holding that Albert Linch Jordan’s conviction under 18 U.S.C. § 641 is not a “serious crime” as that term is defined by Rule 8, Ala. R. Disc. P.
I respectfully dissent from the portion of the main opinion holding that a conviction under 18 U.S.C. § 371 for conspiracy to convert property might not, under the circumstances of this case, be a “serious crime.”[10]
Rule 8(c)(2) defines a “serious crime” as follows:
“(2) A ‘serious crime’ is defined as:
“(A) A felony;
“(B) A lesser crime involving moral turpitude;
*734 “(C) A lesser crime, a necessary element of which, as determined by the statutory or common-law definition of such crime, involves interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or
“(D) An attempt, a conspiracy, or the solicitation of another to commit a ‘serious crime.’ ”
Subsections (A), (B), and (C) offer three different definitions of a serious crime; subsection (D) provides that an attempt, a conspiracy, or the solicitation of another to commit a “serious crime” is also a “serious crime.” One thus must refer to subsections (A), (B), or (C) to determine whether the crime a person attempted to commit, conspired to commit, or solicited another to commit constitutes a “serious crime.”
Jordan was convicted of conspiring with Sheriff Jimmy Woodward to “receiv[e], retain[ ], and conveH [ ] [National Crime Information Center (‘NCIC’) ] records to their own use.” This conviction under 18 U.S.C. § 371 calls into play Rule 8(c)(2)(D). It is a “serious crime” under subsection (D) of Rule 8(c)(2) if the crime the parties conspired to commit — conversion of property — constitutes a “serious crime” under subsection (A), (B), or (C) of Rule 8(c)(2).
It is undisputed that subsections (A) and (B) are not in play; thus, we must determine if “receiving, retaining, and converting NCIC records” is covered by subsection (C) of Rule 8(c)(2). The law regarding whether a crime is a “serious crime” under Rule 8(c)(2)(C) is well established. As the main opinion states:
“This is not the first time this Court has been called upon to review the issue whether ‘a crime less than a felony and not involving moral turpitude [may] be considered a “serious crime” ’ as that term is defined in Rule 8. [Alabama State Bar v.] Tipler, 904 So.2d [1237,] 1239 [ (Ala.2004) ]. See also Alabama State Bar v. Quinn, 926 So.2d 1018 (Ala.2005). In Tipler, in which we were also applying Rule 22(a)(2) and Rule 8(c)(2), we stated ‘[t]he dispositive issue’ in that case as ‘whether Tipler’s conviction ... [was] a “serious crime” within the meaning of Rule 8(c)(2)(C).’ 904 So.2d at 1240. In Tipler, we stated that, in making its determination whether the crime falls within the definition of a ‘serious crime’ found in Rule 8(c)(2)(C), Ala. R. Disc. P., the Board ‘is required to consider only the necessary elements of the crime.’ 904 So.2d at 1241. We further explained in Tipler that a review of the plain language of the charging statute will reveal the necessary elements: ‘Rule 8(c)(2)(C) defines a crime as a “serious crime” if the necessary elements of the statutory definition of the crime involve [“misappropriation, or theft”].’ Id. at 1241.”
92 So.3d at 728-29. Thus, the applicable analysis requires this Court to consider whether there is a conviction for a conspiracy and, if so, whether the conspiracy is to commit an offense that falls under the definition of a “serious crime” found in Rule 8(c)(2)(C).
The main opinion recognizes that, in determining whether an offense, standing alone, is a “serious crime” for purposes of Rule 8(c)(2)(C), the analysis in Alabama State Bar v. Tipler, 904 So.2d 1237 (Ala.2004), controls. However, the main opinion disregards Tipler when analyzing whether an offense that is the object of a conspiracy constitutes a “serious crime.” The rationale provided in the main opinion for this approach is that Tipler is applicable only for the purpose of determining whether an offense constitutes a “serious crime” under Rule 8(c)(2)(C) and that this case is different because it involves an analysis under Rule 8(e)(2)(D). I see no *735 distinction: an analysis under Rule 8(c)(2)(C) is part of, and is required by, the analysis under Rule 8(c)(2)(D). In this case, the analysis under Rule 8(c)(2)(C) of Jordan’s conviction for violating 18 U.S.C. § 371, as stated in Tipler, is compelled under the basic rule of stare decisis.[11]
The main opinion, however, goes further and sets forth a new analysis applicable to offenses falling within Rule 8(c)(2)(D):
“When considering whether a conviction for conspiracy to commit a ‘serious crime’ is a ‘serious crime’ as defined in Rule 8(c)(2)(D), the analysis must include, in addition to an examination of the elements of the offense, consideration of the facts supporting and the circumstances surrounding the conspiracy conviction.”
92 So.3d at 731. Under this approach, this Court must, for purposes of an analysis under Rule 8(c)(2)(D), continue to examine the elements of the underlying offense, as Rule 8(c)(2)(C) and Tipler require, but also “consider[ ] ... the facts supporting and the circumstances surrounding the conspiracy conviction.”[12] 92 So.3d at 731. Such a consideration is contrary to the prohibition in Tipler that “the [Board] is not free to examine the degree of ‘seriousness’ of the crime. Rather, it is required to consider only the necessary elements of the crime when determining whether the crime falls within the definition of a ‘serious crime’ found in Rule 8(c)(2)(C).” Tipler, 904 So.2d at 1241.[13]
The rationale expressed in the .main opinion for this additional component to the analysis finds no support in precedent or in the text of the rule and appears to be based on the belief that there is something sinister or unusual about the crime of conspiracy. Specifically, the main opinion, quoting a concurring opinion in a 1949 United States Supreme Court case, states that the conspiracy doctrine can “incriminate persons on the fringe of offending” and that there exists a “looseness and pliability” and “inherent dangers” in the prosecution of conspiracy offenses that “should be in the background of judicial thought,” 92 So.3d at 732; however, it does not identify any such concerns in the present case. Further, the main opinion suggests that there is a “habit to indict for conspiracy in lieu of prosecuting for the substantive offense itself,” 92 So.3d at 732, *736 but no such thing occurred in this case: Jordan was convicted of receiving the records he was convicted of conspiring to receive, retain, and convert. Thus, none of the perceived problems the main opinion identifies actually exists in this case or necessitates the creation of a new approach to analyzing Rule 8(c)(2)(D).
Moreover, Jordan does not argue to this Court that Rule 8(c)(2)(D) should be modified or that the rationale expressed in the main opinion should be adopted. Although in some situations this Court will affirm a judgment on grounds not raised by the parties, “[tjhere is a rather obvious fundamental difference in upholding the trial court’s judgment and reversing it.” Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988). This Court does not reverse a judgment based on an argument that has not been made on appeal. Yellow Dog Dev., LLC v. Bibb Cnty., 871 So.2d 39, 41 (Ala.2003) (“[Tjhis Court will not ‘reverse a trial court’s judgment ... based on arguments not made to this [Cjourt.’ ” (quoting Brown v. Wal-Mart Stores, Inc., 864 So.2d 1100, 1104 (Ala.Civ.App.2002))); Tucker v. Cullman-Jefferson Cntys. Gas Dist., 864 So.2d 317, 319 (Ala.2003) (“ ‘An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless 'presented and argued in brief.’ ” (quoting Braxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App.1988))).
I would follow the plain language of Rule 8(c)(2)(C) and (D), and I concur with this Court’s analysis set out in its original opinion in this case released on December 16, 2011:
“Section 371 states:
‘“If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.
“ ‘If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.’
“[T]he Eleventh Circuit Court of Appeals stated in [United States v. Jordan, 582 F.3d 1239 (11th Cir.2009),] that count one of the indictment charged both Woodward and Jordan with conspiring to violate 18 U.S.C. § 641 ‘by receiving, retaining, and converting NCIC records to their own use,’ 582 F.3d at 1244 (emphasis added), and concluded that the evidence was sufficient to support Jordan’s conviction for conspiracy under § 371.[8] Similarly, the district court’s judgment reflected that Jordan’s conviction under count one of the indictment was based, in pertinent part, on ‘Conspiracy to Convert to Own Use Records and Things of Value of the United States....’
“Rule 8(c)(2)(D) defines a ‘serious crime’ as including ‘[a]n attempt, a conspiracy, or the solicitation of another to commit a “serious crime.’” Because Jordan was found guilty of, among other things, conspiring to convert the NCIC records, and because a conversion of those records would represent a misappropriation[9] of the same and therefore constitute a ‘serious crime’ under Rule 8(c)(2)(C), the conclusion is inescapable that, under count one, Jordan was convicted of conspiring to commit a serious crime, which conspiracy in and of itself would constitute a serious crime under Rule 8(c)(2)(D). It necessarily follows then that Jordan’s conviction for violating § 371 constitutes a conviction for a serious crime, because that conviction is *737 based on Jordan’s alleged conspiracy with Woodward.
I would thus affirm the Board’s decision that the conviction for conspiracy was a “serious crime” under Rule 8. Therefore, as to that portion of the main opinion, I dissent.
MAIN, J., concurs.
MURDOCK, Justice
(statement of recusal).
I testified as a character witness on behalf of Albert Jordan in the federal proceeding out of which the present case arises. I therefore recuse myself.

. The main opinion does not appear to hold that the conspiracy conviction cannot constitute a "serious crime” under the rule.

.Tipler is not challenged on appeal, and the doctrine of stare decisis informs this Court’s decision to follow it. Stare decisis " ‘is the only thing that gives form, and consistency, and stability to the body of the law. Its structural foundations, at least, ought not to be changed except for the weightiest reasons.’ ” Exxon Corp. v. Department of Conservation & Natural Res., 859 So.2d 1096, 1102 (Ala.2002) (quoting Bolden v. Sloss-Sheffield Steel & Iron Co., 215 Ala. 334, 340, 110 So. 574, 580 (1925) (Somerville, J., dissenting)). In this case, Tipler is controlling precedent, and we have not been asked to abandon it. "Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so.” Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So.2d 914, 926 (Ala.2002).

. The main opinion does not speak to the issue whether the new analysis would be applicable when reviewing a conviction for attempting to or soliciting another to commit a serious offense.

. Rule 8(c)(2) does not call for a consideration of mitigating circumstances in determining whether an offense is a "serious crime.” Instead, it calls for a legal determination based on clearly defined parameters of subsections (A), (B), (C), and (D) of that rule. Mitigating circumstances are more appropriately considered in determining punishment, which determination is separately appealable and has not yet occurred. Any mitigating circumstances surrounding the conspiracy conviction and tending to reduce Jordan’s culpability should be considered at that time; otherwise, the Court risks conflating the two separate considerations.

“8As with Jordan’s § 641 conviction under count three, the abbreviated recitation of the applicable portion of the first paragraph of § 371, which specifically eliminates the ‘embezzles, steals, [or] purloins’ language, reflects the apparent determination by the Eleventh Circuit (having before it both the indictment and the record of that appeal, neither of which are in the appellate record before this Court) that the conspiracy count, being dependent on the § 641 offense that Woodward and Jordan were alleged to have conspired to commit, included that portion of § 641 criminalizing a defendant’s knowing conversion.

“ 9 The definition of ‘misappropriation’ that the Bar relied on at the hearing, apparently from an edition of Black’s Law Dictionary predating the 6th edition, provides as follows:
“‘Misappropriation. The act of misappropriating or turning to a wrong purpose; wrong appropriation; a term which does not necessarily mean peculation, although it may mean that. Term may also embrace the taking and use of another’s property for sole purpose of capitalizing unfairly on good will and reputation of property owner ....’”